**James K. DIVELLO, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 04A03–0201–CR–14.

Court of Appeals of Indiana.

Jan. 29, 2003.

Brian G. Dekker, O'Brien & Dekker, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

James K. Divello ("Divello") brings this discretionary interlocutory appeal from the Benton Circuit Court's denial of his Motion to Suppress. He raises two issues, which we restate as whether the warrantless entry and search of Divello's property violates the Fourth Amendment of the United States Constitution or Article I, Section 11 of the Indiana Constitution.

We reverse.

### Facts and Procedural History

On October 2, 2001, at approximately 10:00 a.m., Deputy Matt Rosenbarger ("Deputy Rosenbarger") of the Benton County Sheriff's Department received a telephone call from an anonymous person who told Deputy Rosenbarger that Divello had recently harvested a substantial amount of marijuana and was dealing it out of his residence in Otterbein, Indiana. Def.'s Ex. Q, p. 3. The caller described the location of Divello's residence at 204 West First Street and stated that Divello also owned a house at 106 South Church Street, located just south of his residence. Def.'s Ex. Q, pp. 3–4. Deputy Rosenbarger then spoke with Indiana State Troopers Philip McBride ("Trooper McBride") and Mark Mitchell ("Trooper Mitchell") about the telephone call. They decided to go to Divello's residence at 204 West First Street in an attempt to speak with him. When they arrived at Divello's residence, Deputy Rosenbarger first knocked on the back door. A porch was located at this entrance, and a walkway led from the ga-

rage area to this porch. A sidewalk also led from the street to this porch. Divello later testified that it was normal for guests and visitors to use either this back door or the front door. Tr. p. 26. After receiving no answer, Deputy Rosenbarger went around to knock on the front door, while Trooper Mitchell continued to knock on the back door.

When the officers received no answer at the First Street residence, they walked through Divello's backyard and through an open gate in the privacy fence behind Divello's residence to gain access to the adjacent Church Street property also owned by Divello. Trooper McBride stated that they proceeded through the yard as a shortcut and not to gather any evidence. Tr. p. 116. By walking through this opening in the fence, the officers came out on the driveway of the Church Street property.

Trooper McBride noticed that a barn adjacent to the driveway of the Church Street property had an open door. He called into the barn to determine if anyone was inside. As Trooper McBride did this, Trooper Mitchell walked down the driveway to the front door and knocked to see if anyone was inside of the house. After he received no answer, Trooper Mitchell opened a gate in a privacy fence to the left of the front door in order to reach a side door and knocked on that door. He then returned to the front door and knocked; he again received no answer. Thereupon, Trooper Mitchell walked back down the driveway to the back of the house and looked in the windows of the house to determine if anyone was inside. When he reached the back of the house, he told the other officers that there had been no answer.

A truck was parked behind the house, partly in the grass and partly in the grav-

el, where the driveway wrapped around behind the house. It was located approximately four feet from the house. When Trooper Mitchell returned from the front of the house, he and Trooper McBride ran the license plate number on the truck to determine who owned it. While doing so, Deputy Rosenbarger walked around the truck, between the truck and the house, and looked underneath it. While he was between the truck and the house, he smelled the odor of marijuana coming from the southwest corner of the house. At that point, Troopers McBride and Mitchell came over and also smelled the marijuana. Trooper McBride stated that he had to get approximately eighteen inches away from the house in order to smell the odor of marijuana. Tr. p. 80. The officers then left, obtained the search warrant at issue in this case based on the probable cause of the marijuana odor, and then executed the warrant.

On October 12, 2001, Divello was charged with dealing marijuana,[1] as a Class D felony, possession of marijuana,[2] as a Class D felony, maintaining a common nuisance,[3] as a Class D felony, and reckless possession of paraphernalia,[4] as a Class A misdemeanor. He was also charged with an habitual substance offender enhancement and an habitual offender enhancement. Appellant's App. pp. 6, 8. On October 24, 2001, Divello filed a Motion to Suppress requesting the trial court to suppress all evidence obtained pursuant to the search warrant. Appellant's App. p. 10. He alleged that the entry and search of his property violated the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution. Hearings on the motion were held on November 2, 2001 and November 5, 2001. On November 16, 2001, the trial court denied Divello's motion. Divello now appeals.

**Discussion and Decision**

 The standard of review for the denial of a motion to suppress evidence is similar to that regarding other sufficiency issues. *Ammons v. State*, 770 N.E.2d 927, 930 (Ind.Ct.App.2002). We determine whether the trial court's denial of the motion was supported by substantial evidence of probative value. *Id.* We will not reweigh the evidence, and any conflicting evidence is considered in a light most favorable to the trial court's decision. *Id.* "However, this review is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant." *Id.* (citing *Caudle v. State*, 749 N.E.2d 616, 618 (Ind. Ct.App.2001), *trans. denied*). Because we hold that the conduct at issue violated the Fourth Amendment of the United States Constitution, we do not consider Divello's Indiana Constitution claims.

 Under the Fourth Amendment, our analysis focuses on whether a person has a "constitutionally protected reasonable expectation of privacy." *VanWinkle v. State*, 764 N.E.2d 258, 263 (Ind.Ct.App. 2002), *trans. denied* (quoting *Oliver v. United States*, 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). "An individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Shultz v. State*, 742 N.E.2d 961, 964 (Ind.Ct.App.2001), *trans. denied* (quoting *Oliver*, 466 U.S. at 178,

---

1. Ind.Code § 35–48–4–10 (1998 & Supp. 2002).

2. Ind.Code § 35–48–4–11 (1998).

3. Ind.Code § 35–48–4–13(b)(2) (1998 & Supp. 2002).

4. Ind.Code § 35–48–4–8.3(a) (1998).

104 S.Ct. 1735). The area immediately surrounding one's home is known as "curtilage," a term derived from Medieval Latin for court or yard.[5] *Oxford English Dictionary* (J.A. Simpson & E.S.C. Weiner eds.) (2d ed. 1989).

■ When police enter onto private property in order to conduct an investigation or for another legitimate purpose and restrict their entry to places that other visitors would be expected to go, such as walkways, driveways, or porches, any observation made from these areas is permissible under the United States Constitution and the Fourth Amendment thereto. *Shultz*, 742 N.E.2d at 964. Accordingly, an individual does not have a reasonable expectation of privacy with regard to things or activities within a residence that may be observed by persons using their natural senses from places impliedly open to a visitor's entry. *See, e.g., Lorenzana v. Superior Court*, 9 Cal.3d 626, 108 Cal. Rptr. 585, 511 P.2d 33, 42 (1973), *cited in* 1 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 2.3(c) at 482–483 (3d. ed. 1996). In general, this means that "if police utilize 'normal means of access to and egress from the house' for some legitimate purpose, such as to make inquiries of the occupant ..., it is not a Fourth Amendment search for the police to see or hear or smell from that vantage point what is happening inside the dwelling." LaFAVE, § 2.3(c) at 483–484 (quoting *Lorenzana*, 108 Cal.Rptr.

585, 511 P.2d at 37). The implied invitation, however, extends only to those with legitimate business, and applies only to recognized access routes reasonable under the circumstances. *State v. Cloutier*, 544 A.2d 1277, 1280 (Me.1988).[6]

Divello argues that because the Church Street property is "set back from the street, that three sides of his property is [sic] surrounded by an eight foot privacy fence, and the fourth side is private property owned by the Lake Erie and Western Railway," he had an expectation of privacy. Br. of Appellant at 16. Divello contends that under these facts and circumstances his expectation was reasonable. Because the officers were within this area for which he had a reasonable expectation of privacy and without a warrant in order to observe/smell the marijuana odor, which served as probable cause for the warrant at issue, he argues the officers violated the Fourth Amendment. We agree.

■ In this case, the officers came to Divello's First Street residence to speak with him about an anonymous tip that Divello was growing marijuana on the property. An anonymous tip is insufficient to support the issuance of a warrant, *see Jaggers v. State*, 687 N.E.2d 180, 184 (Ind. 1997), or to justify an investigatory detention. *See Washington v. State*, 740 N.E.2d 1241, 1246 (Ind.Ct.App.2000), *trans. denied.* However, the investigation of an

**5.** Historically, the curtilage of one's home has been considered protected from unreasonable searches and seizures under the Fourth Amendment. "The United States Supreme Court has explained the protection afforded the curtilage as one of 'family and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most high.'" *Rook v. State*, 679 N.E.2d 997, 999–1000 (Ind. Ct.App.1997) (quoting *California v. Ciraolo*, 476 U.S. 207, 212–13, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)).

**6.** While these cases apply federal constitutional principles, at least the same, and perhaps even more restrictive reasoning applies under Article I, Section 11 of the Indiana Constitution, which provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated," and protects "from unreasonable police activity those areas of life that Hoosiers regard as private." *Brown v. State*, 653 N.E.2d 77, 79 (Ind.1995).

anonymous tip is clearly legitimate police activity so long as the investigation does not violate applicable constitutional provisions. Accordingly, legitimate police business brought the officers to Divello's property in this case, and justified their entry onto the First Street property to effectuate this business.

But, while the officers appropriately visited Divello's First Street residence to conduct legitimate police business, they failed to limit their visit to areas that could reasonably have been viewed as open to them for that business, and remained on Divello's property after it became clear to them that the purpose for their visit could not be properly fulfilled. As noted above, the implied invitation to come upon private property covers only normal and recognized means of access reasonable under the circumstances. *See Cloutier*, 544 A.2d at 1280. The circumstances determining which portions of property may reasonably be viewed as open to visitors are determined on a case-by-case basis and will necessarily include consideration of the features of the property itself, such as the existence of walkways and fences or other obstructions to access or viewing, the location of primary residential entryways, as well as the nature or purpose for the visitor's call. Common experience teaches that under normal circumstances, uninvited visitors coming to a residence to speak with an owner or resident are expected to come to the residence's most direct, obvious and prominent entryway, which in most cases is its front door.

Under most circumstances, uninvited visitors are also expected to leave by the same route after knocking on the front door and receiving no response. Of course, the nature of the circumstances surrounding the visit can also affect the scope of the property open by implication. For example, persons previously invited to access a residence by alternate entryways, or those coming on truly pressing or emergency matters could reasonably be expected to seek out residents through areas other than the front door.

Here, the officers were responding to an anonymous tip regarding the cultivation of marijuana. This information, while suggesting illegal activity, did not rise to the level necessary to justify anything more than a visit along the most obvious and direct route to the front door of each residence. Although the officers first proceeded to the back door of Divello's residence, this was not error. When there are open and obvious clues that a door other than the front door is to be used as a direct and primary entryway, then that door may also be approached by uninvited visitors. Here, a sidewalk led from the driveway to the porch adjoining the back door, and another sidewalk led from the street to the porch. Divello himself stated that it was normal for visitors to come to either the front or back door. The short videotape admitted as State's Exhibit 2 is especially helpful in this regard. Because the officers were there for a legitimate purpose and they restricted their movements to a place where visitors would be expected to go, this was constitutionally permissible.

Although the initial entry onto the First Street property was permissible, the officers should not have crossed through the private backyard of the First Street property and through the privacy gate to the Church Street property, as this area cannot be regarded as one through which uninvited visitors would be expected to travel under the circumstances. Instead, after Divello did not appear at the front or back door of the First Street residence, the officers, having no information justifying further intrusion, should have proceeded along the most direct public way from

the First Street residence to the front door of Divello's Church Street property.

Once at the Church Street property via the available sidewalks, the officers should have walked to the front door and knocked. After receiving no answer, they should have left, as the purpose for their visit to that property terminated due to lack of response from any occupant. Otherwise, the well-established right of citizens to refuse to answer their door would be illusory. *See Cox v. State,* 696 N.E.2d 853, 858 (Ind.1998) (citing *U.S. v. Berkowitz,* 927 F.2d 1376, 1387 (7th Cir.1991)). Under the facts and circumstances, reviewing both the characteristics of the property and the nature or the purpose of the visit, no other part of the Church Street property was properly subject to the officers' observation.

But in fact, after the officers elicited no response at the Church Street property, they noticed a truck parked behind the house, partly in the grass and partly in the driveway. Trooper Mitchell and Trooper McBride then proceeded to run the license plate number of the truck. Deputy Rosenbarger also walked around the truck and looked underneath it. This brought him within a few feet of the house. It was at this time that Deputy Rosenbarger smelled the odor of marijuana coming from the southwest corner of the house. Both troopers also came over and smelled the marijuana odor. Trooper McBride stated that he had to be within approximately eighteen inches of the house in order to smell the odor. Tr. p. 80.

We believe this observation was the result of constitutionally impermissible presence on Divello's property for two reasons. First, after there was no response from any occupant of the Church Street property, they were no longer there for a legitimate investigatory purpose and should have left. Second, when Deputy Rosen-

barger walked around the truck and within four feet of the house, he was clearly no longer in a place where visitors could be expected to go; he had invaded the curtilage of Divello's property. *See Shultz,* 742 N.E.2d at 964; *Rook v. State,* 679 N.E.2d 997, 999 (Ind.Ct.App.1997). Divello had a reasonable expectation of privacy in this area, and therefore, Deputy Rosenbarger's actions violated the Fourth Amendment. *Rook,* 679 N.E.2d at 999.

Any evidence found as a result of an unconstitutional search under the Fourth Amendment must be suppressed. *See Granados v. State,* 749 N.E.2d 1210, 1215 (Ind.Ct.App.2001).

Under these facts and circumstances, the observation of the odor of marijuana, which served as probable cause for the search warrant at issue, was obtained in violation of the Fourth Amendment of the United States Constitution. All evidence obtained pursuant to that warrant must be suppressed.

Reversed.

BAILEY, J., concur.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting

I respectfully dissent.

The police in this instance were merely involved in a permissible investigation, albeit based upon an anonymous tip. They did not violate the "curtilage" by walking between the truck and the house. If it is not a constitutional violation to enter upon a porch to knock upon a door, it is not a constitutional violation to enter upon an area further removed from the person's private home in order to continue the investigation as to the presence of the owner.

If, as held in *Wilkinson v. State,* 743 N.E.2d 1267 (Ind.Ct.App.2001), *trans. de-*

*nied,* the running of a random license plate check is not a constitutional search violation, it would seem that Officer Rosenbarger's presence next to the truck, which was partially on the driveway and partially on the grass, would also be permissible. Here, the officers merely smelled the marijuana while in proximity to the truck next to the house.

Here, there was no search at all until after the search warrant was obtained. It is therefore unlike *Shultz v. State,* 742 N.E.2d 961 (Ind.Ct.App.2001), *trans. denied,* relied upon by the majority. In *Shultz,* a search occurred in that the officer wiped dirt off the wheel-well of a semi-tractor in order to see the partial VIN.

Finally, even if the conduct of the officers could be reasoned to constitute a search, it was not an *unreasonable* search which is what is prohibited by the Fourth Amendment of the U.S. Constitution and by Article 1 Section 11 of the Indiana Constitution.

I would affirm the denial of Divello's Motion to Suppress.