Albert HARDISTER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0310–CR–535.

Court of Appeals of Indiana.

Feb. 7, 2005.

Rehearing Denied March 29, 2005.

Victoria Ursulskis, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Albert Hardister was found guilty by a jury of dealing in cocaine and possession of cocaine, both Class A felonies, possession of cocaine and a firearm, a Class C felony, unlawful possession of a firearm by a serious violent felon, a Class B felony, and obstruction of justice, a Class D felony. The trial court sentenced Hardister to an aggregate of sixty-eight years. Hardister now appeals his convictions and his sentence. We reverse.

### Issues

Hardister raises five issues for our review. We find two issues dispositive and restate them as follows:

1. Whether the trial court properly admitted evidence seized from the warrantless search of the residence located at 407 North Hamilton Street; and

2. Whether the trial court properly denied Hardister's motion for judgment on the evidence.

### Facts and Procedural History [1]

On December 5, 2000, Indianapolis Police Officers Jack Tindall and Christopher Lawrence went to the residence located at 407 North Hamilton Street [2] pursuant to an anonymous report that someone was cooking drugs there. Officers Tindall and Lawrence did not have a search warrant when they arrived at the residence. The officers arrived after dark at approximately 8 p.m. Both officers went onto the front porch of the residence, and Officer Tindall knocked on the front door. After several seconds, the curtain of the window next to the front door was pulled aside and a face peered out. Officer Tindall later identified this person as Hardister due to his distinctive features. [3] Officer Tindall announced that he was a police officer and shined his flashlight on his badge. Hardister's face moved away from the window and a sec-

---

1. Oral argument was heard in this case on October 19, 2004, at Creekside Middle School in Carmel, Indiana. We thank the staff and students for their hospitality.

2. 407 North Hamilton Street is actually a duplex residence. Half of the building is des-

ignated as 407 North Hamilton Street, while the other half is designated 405 North Hamilton Street.

3. Hardister is a fair-skinned African-American male with freckles on his face.

ond unidentified face peered out. The curtain was then replaced, and Officers Tindall and Lawrence heard running feet. Through the window curtain, they saw two silhouettes running towards the well-lit kitchen in the rear of the house. In order to prevent anyone from escaping out the back door, both officers ran to the rear of the residence by following a sidewalk located on the north side of the building.

When the officers arrived at the back of the house they found no one exiting the residence. Officer Lawrence then proceeded back to some windows located on the north side of the house. These windows were partially covered by newspaper. Officer Lawrence stepped off of the sidewalk and onto the ground below the windows to peer inside the house through an uncovered portion of one of the windows. He saw two to three men huddled together, but did not see any drugs.

Officer Tindall remained in the rear of the house. He followed the sidewalk to the back door of the residence that exited onto the back porch. To the left of the back porch was an uncovered window. In order to look into this window, Officer Tindall crossed over the back porch and stood on the ground below the window. When Officer Tindall looked into the window, he saw Hardister dumping a white, powdery substance down the kitchen sink drain.

Officers Tindall and Lawrence then heard a commotion in the front of the house. They both raced to the front of the building where they saw three individuals exiting the house onto the roof through a window on the second story. By this time other officers had arrived on the scene. Two of the individuals, Thomas Kendall and Kyle Kendall, obeyed police orders to stop and sat down on the roof. The third

individual, Joshua Kendall,[4] was the last person to come out of the window. As he emerged on the roof he dropped several packages of a white substance that appeared to be cocaine. Joshua Kendall attempted to flee by jumping to the roof of the neighboring building. As he did so, he dropped several more packages of cocaine. Recognizing that he had nowhere to go, Joshua Kendall then jumped back onto the roof of 407 North Hamilton Street, and dove back into the residence through the second story window he had exited.

At this point, officers obtained permission from the owners of 405 North Hamilton Street to enter their residence so that they could gain access to the roof of the building. When the officers made it to the roof, Thomas and Kyle Kendall were arrested. Two officers then entered the residence by going through the open second story window. Once inside, the officers discovered Fredrick Pace who was taken into custody. Officers later discovered Hardister and Joshua Kendall in the attic of the residence and both were arrested. At the time Hardister was arrested, no guns or drugs were found on his person.

Each of the five arrested individuals was then taken to the first floor of the residence where they were held until Detective Phillip Smiley arrived with a search warrant. When the police searched the house, they discovered over three hundred grams of cocaine. Cocaine was found in the basement, an upstairs bedroom, and in the kitchen. Cocaine that Joshua Kendall had dropped was also found on the roof of the building and directly in front of the building. Some of the cocaine had been packaged for sale. The police also found a scale. The police discovered a surveillance system consisting of a camera trained on the back door, a video monitor, and a

---

4. Joshua Kendall, Kyle Kendall, and Thomas Kendall are brothers.

yellow "warning light" that lit up whenever the doorbell was pushed. Two loaded guns with extra ammunition were found. One of the guns was in a cardboard box in the basement, while the second gun was concealed behind a couch in the living room. The police also found $1700 in a bathroom cabinet. Hardister was later charged with dealing in cocaine and possession of cocaine, both Class A felonies, possession of cocaine and a firearm, a Class C felony, unlawful possession of a firearm by a serious violent felon, a Class B felony, and obstruction of justice, a Class D felony.

Before trial, Hardister made a motion to suppress the evidence obtained from the warrantless search of the residence. The trial court initially considered whether Hardister had standing to make this motion. Hardister testified at a suppression hearing that 407 North Hamilton Street was his permanent residence on December 5, 2000. He stated that he, along with Joshua Kendall, had rented the house with the help of a Michael D. Dile. Dile apparently signed the lease for Hardister and Kendall, who in turn paid rent to Dile. The trial court found that Hardister had standing, but denied his motion to suppress. At trial, Hardister's counsel made a timely objection to the introduction of the evidence seized from the search.

Hardister was tried with his co-defendants Joshua Kendall and Thomas Kendall.[5][6] During the presentation of its case, the State failed to introduce any evidence that 407 North Hamilton Street was Hardister's permanent residence on December 5, 2000. After the State rested, Hardister moved for judgment on the evidence. The trial court rejected this motion. The jury later found Hardister guilty as to all counts. The trial court, after finding Hardister's extensive criminal history to be an aggravating factor, sentenced Hardister to an aggregate of sixty-eight years: fifty years for the dealing in cocaine conviction, eight years on the possession of cocaine and a firearm conviction, fifteen years for the possession of a firearm by a serious violent felon conviction, and three years for the obstruction of justice conviction. The court entered no conviction or sentence on the charge of possession of cocaine. The trial court determined that Hardister's sentences for dealing in cocaine, possession of a firearm by a serious violent felon, and obstruction of justice should run consecutively, while his possession of cocaine and a firearm conviction was to run concurrently with his dealing in cocaine conviction and possession of a firearm by a serious violent felon conviction. This appeal ensued.

### Discussion and Decision

### I. Admission of Evidence from Warrantless Police Search

Hardister first contends that the trial court erred in admitting the testimony of Officers Tindall and Lawrence regarding what each of the officers saw when they peered into the windows of the residence because the officers' actions constituted warrantless searches in violation of the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. We agree.

### A. Standard of Review

▪ Hardister argues that the trial court erred in denying his motion to suppress any evidence obtained from the officers' warrantless search of the residence located at 407 North Hamilton Street on

---

5. Kyle Kendall was a minor at the time and Fredrick Pace was tried separately.

6. We would note that Joshua Kendall's appeal is still pending before another panel of this court.

December 5, 2000. Hardister did not seek an interlocutory appeal after the denial of his motion to suppress, but instead proceeded to trial where he made a contemporaneous objection to the admission of the evidence obtained from the search. In this procedural posture, "the issue is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Washington v. State*, 784 N.E.2d 584, 587 (Ind.Ct.App. 2003).

A trial court has broad discretion in ruling on the admissibility of evidence. *Id.* We will only reverse a trial court's ruling on the admissibility of evidence when the trial court has abused its discretion. *Id.* A trial court abuses its discretion when it makes a decision "that is clearly against the logic and effect of the facts and circumstances before the court." *Id.*

B. Officers' View Through the Window

■ Hardister's principal contention is that the police violated the Fourth Amendment and Article I, Section 11 of the Indiana Constitution when they looked in the windows of the residence located at 407 North Hamilton Street. Hardister focuses on the actions of Officers Tindall and Lawrence. He contends that the areas under the respective windows where Officer Tindall and Officer Lawrence stood were within the curtilage of the residence, and, thus, were protected areas under the Fourth Amendment. Hardister concludes that each officer's act of peering in through the window amounted to a search under the Fourth Amendment, and, because it was done without a warrant, violated the Fourth Amendment.

■ The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." Federal Fourth Amendment law "protects citizens ... from warrantless searches of places or items in which the individual has an actual subjective expectation of privacy which society recognizes as reasonable." *VanWinkle v. State*, 764 N.E.2d 258, 266 (Ind.Ct.App.2002), *trans. denied.* "Historically, the curtilage of the home, the area immediately surrounding the residence, has been considered within the purview of the Fourth Amendment and protected from unreasonable searches and seizures." *Rook v. State*, 679 N.E.2d 997, 999 (Ind.Ct.App.1997). We have also recently stated:

> When police enter onto private property in order to conduct an investigation or for another legitimate purpose and restrict their entry to places that other visitors would be expected to go, such as walkways, driveways, or porches, any observation made from these areas is permissible under the United States Constitution and the Fourth Amendment thereto. Accordingly, an individual does not have a reasonable expectation of privacy with regard to things or activities within a residence that may be observed by persons using their natural senses from places impliedly open to a visitor's entry. In general, this means that "if police utilize 'normal means of access to and egress from the house' for some legitimate purpose, such as to make inquiries of the occupant ... it is not a Fourth Amendment search for the police to see or hear or smell from that vantage point what is happening inside the dwelling."

*Divello v. State*, 782 N.E.2d 433, 437 (Ind. Ct.App.2003), *trans. denied* (internal citations omitted).

*Divello* is very similar to this case. In *Divello*, police went to the defendant's house to investigate an anonymous tip that the defendant was selling marijuana out of his residence. The officers did not have a

search warrant. Upon arriving at the defendant's home, the officers first knocked on the back door. A porch was located at this entrance, and a sidewalk led from the street to this porch. When the officers received no answer at the back door, they knocked on the front door, but no one answered there either. The anonymous tip had informed the officers that the defendant owned a second home just south of the first home, so the officers went to the defendant's second residence to see if anyone was there.

To gain access to the adjacent property, the officers walked through the backyard of the first residence and then through an open gate in a privacy fence. One of the officers walked up the driveway and knocked on the front door but again received no answer. The officers then noticed a truck in the back of the second residence that was parked partly on the driveway and partly in the grass. Two of the officers returned to their vehicle to run the license plate number on the truck to ascertain who owned it. A third officer remained with the truck. This officer walked around the truck, so that he was between the truck and the house, in order to look underneath the truck. While this officer was between the truck and the house, he smelled the odor of marijuana coming from the house. When the other two officers returned to the third officer's position they also smelled marijuana. One of the officers stated that he had to get eighteen inches away from the house before he could smell the marijuana.

The officers then left the defendant's residence, and, based on the marijuana odor, were able to get a search warrant. The defendant's home was searched and marijuana was discovered. The defendant was charged with dealing in and possession of marijuana. He filed a motion to suppress the evidence obtained pursuant to the search warrant, arguing that the officers' entry onto and search of his property violated the Fourth Amendment. The trial court denied the defendant's motion to suppress.

We initially noted that the officers' entry onto the property of the defendant's first residence did not violate the Fourth Amendment because the police were there to investigate an anonymous tip, which is legitimate police business. *Id.* at 438. We elaborated that although the anonymous tip suggested illegal activity it, "did not rise to the level necessary to justify anything more than a visit along the most obvious and direct route to the front door of each residence." *Id.* We concluded that the officers should not have crossed through the backyard of the first residence and then through the open privacy gate to the second residence because "this area cannot be regarded as one through which uninvited visitors would be expected to travel under the circumstances." *Id.* We indicated that after the defendant did not answer the door at his first residence, "the officers, having no information justifying further intrusion, should have proceeded along the most direct public way from the [first] residence to the front door of [defendant's] [second] property." *Id.* at 438–39. When the officers received no answer at the second residence, they should have left the defendant's property because the purpose for their visit "terminated due to lack of response from any occupant." *Id.* at 439. We concluded that at that point "no other part of the [second residence] was properly subject to the officers' observation." *Id.*

We last turned to the officers' observation of the odor of marijuana. We found that this observation was constitutionally impermissible for two reasons:

First, after there was no response from any occupant of the [second] property,

they were no longer there for a legitimate investigatory purpose and should have left. Second, when Deputy Rosenbarger walked around the truck and within four feet of the house, he was clearly no longer in a place where visitors could be expected to go; he had invaded the curtilage of Divello's property. Divello had a reasonable expectation of privacy in this area, and therefore, Deputy Rosenbarger's actions violated the Fourth Amendment.

*Id.* (internal citations omitted). We ultimately held that the officers' observation of the odor of marijuana was obtained as a result of an unconstitutional search under the Fourth Amendment, and that all evidence obtained from that search must be suppressed. *Id.*

■ Here, Officers Tindall and Lawrence went to 407 North Hamilton Street to investigate an anonymous tip. The investigation of an anonymous tip is legitimate police activity. *Id.* at 437–38. Thus, legitimate police business brought Officers Tindall and Lawrence to 407 North Hamilton Street, and justified their entry onto the property to effectuate that business.

■ The officers went onto the porch of the residence and knocked on the front door. The curtain of the window next to the front door was pulled aside and Hardister peered out. Officer Tindall announced that he was a police officer and illuminated his badge. Hardister moved away from the window and a second person peered out. The curtain was dropped, and the officers heard running feet and saw two silhouettes running towards the well-lit kitchen in the rear of the house. We would first note that the occupants of the residence had a right to refuse to answer their door when Officer Tindall knocked upon it. *See Cox v. State,* 696 N.E.2d 853, 858 (Ind.1998) (citing *U.S. v. Berkowitz,* 927 F.2d 1376, 1387 (7th Cir.

1991)). The failure of the occupants of the residence to answer the door did not give the officers probable cause to search the property. Likewise, hearing running feet and seeing two silhouettes running towards the rear of the house did not provide the officers with probable cause to search the residence. When the officers received no answer to their knock on the front door, they should have left the property because the purpose of their visit terminated due to a lack of response from any occupant of the residence.

However, rather than leaving the property, Officers Tindall and Lawrence ran to the rear of the house in order to catch anyone trying to flee out the back door. When no one exited the house, the officers split up. Officer Lawrence positioned himself on the ground beneath some windows on the north side of the home, while Officer Tindall stood on the ground below the window in the rear of the residence. At that point, both officers had left areas where visitors would normally be expected to go, entered onto the curtilage of the property, and peered into the residence through windows. Officer Lawrence saw a group of two or three African–American males standing together, but saw no drugs or guns. Officer Tindall saw Hardister dumping a white, powdery substance down the kitchen sink drain.

Even if we assume that it was permissible for the officers to go to the back door of the residence, we hold that Officer Tindall's and Officer Lawrence's observations through the windows of the residence were constitutionally impermissible for the same reasons cited in *Divello*. First, when the officers received no response from their knock on the front door of the residence, they were no longer on the property for a legitimate investigatory purpose and should have left. Second, when Officer Tindall and Officer Lawrence stood on the

ground underneath the windows of the residence that they ultimately peered into, they were no longer in a place where visitors would be expected to go, and had invaded the curtilage of the property. Hardister had a reasonable expectation of privacy in the area constituting the curtilage of the home, and, thus, Officer Tindall's and Officer Lawrence's actions violated the Fourth Amendment.

The State argues that pursuant to *Sayre v. State,* 471 N.E.2d 708 (Ind.Ct.App.1984), *trans denied, cert. denied,* 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986), Officer Tindall's and Officer Lawrence's actions did not violate the Fourth Amendment. In *Sayre,* two police officers went to the defendant's home to question her about a theft. When the officers arrived at the defendant's home it was dark, the defendant had her front window uncovered, and lights were on in the kitchen. One of the officers, while standing on the front porch of the residence, knocked on the front door. The second officer stood several feet behind the first officer in the front yard of the residence. The second officer was able to see inside the residence through the uncovered front window. When the first officer announced that it was the police, both officers heard a woman shout "Police!" The second officer then saw a woman run from the front door and several people at a kitchen table with drug paraphernalia move rapidly away. The officers entered the defendant's home and arrested those present.

The defendant argued that she had a reasonable expectation of privacy not to be viewed through her front window, and that the second officer's view into the window from the front yard constituted an unconstitutional search because the officer was "trespassing or in a place he had no right to be . . . ." *Id.* at 713. We noted that the

Seventh Circuit Court of Appeals had previously dealt with this issue and stated, "the question is not whether a trespass has occurred but whether the police officer's actions were reasonable under the circumstances." *Id.* (citing *United States v. Conner,* 478 F.2d 1320 (7th Cir.1973)). In both *Conner* and *United States v. Hanahan,* 442 F.2d 649, 654 (7th Cir.1971), the Seventh Circuit held that technical trespasses committed by police officers engaged in a legitimate investigation did not give rise to a Fourth Amendment violation. We held that the officer's view through the front window, even though he was committing a technical trespass by standing on the defendant's front lawn, did not violate the Fourth Amendment because the officer's "action was part of a reasonable investigation under the circumstances." *Sayre,* 471 N.E.2d at 713.

We find *Sayre* distinguishable. In *Sayre,* when the second officer entered onto the curtilage of the property and peered into the defendant's home, he was still engaged in a legitimate investigation. Here, when Officer Tindall and Officer Lawrence received no answer to their knock on the front door, their purpose for visiting the property terminated. Thus, when they later looked through the windows of the residence, they were no longer on the property for a legitimate investigatory purpose. Officer Tindall's and Officer Lawrence's observations through the windows of the residence were unconstitutional searches under the Fourth Amendment. Evidence found "as a result of an unconstitutional search under the Fourth Amendment must be suppressed." *Divello,* 782 N.E.2d at 439. The trial court erred in admitting testimony from the officers regarding their observations through the windows.[7]

7. Thus far, our analysis has focused on the

officers' actions in relation to the Fourth

## II. Sufficiency of the Evidence

Hardister argues that the trial court erred in denying his motion for judgment on the evidence because there was insufficient evidence to support each of his convictions. We agree.

### A. Standard of Review

Our standard of review for the denial of a motion for judgment on the evidence is the same as that for a challenge to the sufficiency of the evidence. *Hornback v. State*, 693 N.E.2d 81, 84 (Ind.Ct.App.1998). On a claim that the evidence is insufficient to support a jury's verdict, we neither weigh the evidence nor judge the credibility of witnesses. *Id.* We consider only the evidence favorable to the jury's verdict, along with all reasonable inferences that can be drawn therefrom. *Id.* We will affirm the conclusion of the jury if there is substantial evidence of probative value to support their determination. *Id.*

### B. Insufficient Evidence to Support Hardister's Convictions

■■■■■■ Hardister contends that the State presented insufficient evidence to support his convictions for dealing in cocaine, possession of cocaine and a firearm, unlawful possession of a firearm by a serious violent felon, and obstruction of justice. To avoid judgment on the evidence, the State need only present a prima facie case. *Jones v. State*, 697 N.E.2d 57, 59 (Ind.1998). In order to make a prima facie case of Class A felony dealing in cocaine, the State must prove that Hardister possessed with the intent to deliver cocaine in an amount in excess of three grams. Ind. Code § 35–48–4–1(a)(2)(C), (b)(1). A prima facie case of possession of cocaine and a firearm is made when the State proves that Hardister knowingly or intentionally possessed cocaine and a firearm. Ind. Code § 35–48–4–6(a), (b)(1)(B). To establish a prima facie case of unlawful possession of a firearm by a serious violent felon, the State was required to prove that Hardister was a serious violent felon who knowingly or intentionally possessed a firearm. Ind.Code § 35–47–4–5(c). To make a prima facie case of obstruction of justice, the State was required to prove that Hardister altered, damaged, or removed any record, document, or thing, with the intent to prevent it from being produced or used as evidence in any official proceeding or investigation. Ind.Code § 35–44–3–4(a)(3).

■■■■■■ Hardister argues that the State presented insufficient evidence to establish that he possessed any of the drugs or guns found at 407 North Hamilton Street. " 'A conviction for possession of contraband may rest upon proof of either actual or constructive possession.' " *Goffinet v. State*, 775 N.E.2d 1227, 1230 (Ind.Ct.App.2002), *trans. denied*, (quoting *Tardy v. State*, 728 N.E.2d 904, 908 (Ind.Ct.App. 2000)). An individual has actual possession of an item when he or she has direct physical control over the item. *Id.* Because Hardister did not have possession of any drugs or guns when he was arrested, the State was required to establish that

Amendment of the United States Constitution. We also find that the officers' actions violated the Indiana Constitution. Our analysis under Article I, section 11 of the Indiana Constitution "turns to the specific facts of each case and whether police conduct is reasonable in light of the totality of the circumstances." *VanWinkle*, 764 N.E.2d at 266. Officer Tindall's and Officer Lawrence's actions were not reasonable. When the officers received no answer to their knock on the front door, their purpose for being on the property terminated and they should have left the property. Furthermore, it was not reasonable for the officers to leave the areas where visitors would be expected to go, enter onto the curtilage of the property, and peer into the home.

Hardister constructively possessed these items.

To prove constructive possession, the State must show that Hardister had "(1) the intent to maintain dominion and control over the contraband and (2) the capability to maintain dominion and control over the contraband." *Ladd v. State*, 710 N.E.2d 188, 190 (Ind.Ct.App. 1999). To prove the intent element:

> the State must demonstrate the defendant's knowledge of the presence of the contraband. This knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband.

*Conrad v. State*, 747 N.E.2d 575, 582 (Ind. Ct.App.2001), *trans. denied* (internal citations omitted). These additional circumstances have been found to include:

> (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs; (5) drugs in plain view; and (6) location of the drugs in close proximity to items owned by the defendant.

*Ladd*, 710 N.E.2d at 190. To establish the second element of constructive possession, "the evidence must demonstrate the capability to exercise control over the item, that is, the ability to reduce the item to his personal possession or to otherwise direct its disposition or use." *Conrad*, 747 N.E.2d at 582.

The State has failed to present sufficient evidence that Hardister constructively possessed any of the drugs found in the residence. The State's case largely relied upon Officer's Tindall's testimony that he saw Hardister dumping a white, powdery substance down the kitchen sink drain. However, we have concluded that this evidence was obtained in violation of the Fourth Amendment and should not have been admitted. Excluding Officer Tindall's testimony, the State has failed to produce any evidence showing that Hardister had knowledge of the presence of the drugs, or that he had exclusive control over the premises. Although the State has shown that Hardister was present in a place where drugs were found, "[m]ere presence where drugs are located or association with persons who possess drugs is not alone sufficient to support a finding of constructive possession." *Godar v. State*, 643 N.E.2d 12, 15 (Ind.Ct.App. 1994), *trans. denied.* The State failed to present sufficient evidence to sustain Hardister's convictions for dealing cocaine and possession of cocaine. Additionally, without Officer Tindall's testimony, the State presented no evidence that shows that Hardister attempted to destroy the drugs in the residence. Thus, the State has not presented sufficient evidence to support Hardister's conviction for obstruction of justice.

We also hold that the State failed to present sufficient evidence that Hardister constructively possessed the guns found in the residence. When Hardister was arrested, no guns were found on his person. Of the two guns found in the house, one was hidden in a box in the basement and the other was stowed behind the couch in the living room. Because both of the guns were concealed, Hardister contends that he had no knowledge of their presence in the house. He also asserts that he was not capable of exercising control over the guns because he was not in any location where the weapons were found. The State argues that "[t]he presence of the handguns, in a house to which Defendant clearly had full access, and the demonstration of control over the objects in the house, shown by the attempt to destroy cocaine, allows the inference of constructive possession." Appellee's Brief

at 11. We hold that the State failed to demonstrate that Hardister knew of the presence of the guns in the house, and also failed to prove that Hardister had exclusive control over the premises or any other circumstances from which Hardister's knowledge of the presence of the guns could be inferred. We also agree with Hardister that the State has not proven that Hardister could have exercised control over the guns, as it has presented no evidence that would place Hardister in any of the rooms where the guns were located. The State then did not produce sufficient evidence to support Hardister's convictions for possession of cocaine and a firearm, and possession of a firearm by a serious violent felon.

Based on the foregoing, we conclude that the State has failed to present sufficient evidence to sustain each of Hardister's convictions.

### Conclusion

We hold that the trial court erred in admitting Officer Tindall's and Officer Lawrence's testimony regarding what they saw when they looked into the windows of the residence because their observations were obtained as a result of unconstitutional searches under Fourth Amendment, and all evidence derived from those searches should have been excluded. We further hold that the State failed to present sufficient evidence to support Hardister's convictions for dealing cocaine, possession of cocaine and a firearm, possession of a firearm by a serious violent felon, and obstruction of justice. Each of Hardister's convictions is therefore reversed.

Reversed.

KIRSCH, C.J., and BAKER, J., concur.