# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 22 2020, 10:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ross G. Thomas
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert W. Hamilton, | June 22, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 20A-CR-133 |
| v. | Appeal from the Decatur Circuit Court |
| State of Indiana, | The Honorable Timothy B. Day, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 16C01-1712-F4-1389 |

**Kirsch, Judge.**

[1] Robert W. Hamilton ("Hamilton") was convicted of unlawful possession of a firearm by a serious violent felon,[1] a Level 4 felony, possession of methamphetamine[2] as a Level 5 felony, assisting a criminal as a Level 6 felony,[3] possession of marijuana as a Class B misdemeanor,[4] and possession of paraphernalia[5] as a Class C misdemeanor. He appeals the admission of narcotics, paraphernalia, and firearms at his trial and raises two issues under the Fourth Amendment to the United States Constitution, which we restate as:

> I. Whether an officer's visual observations through a window of Hamilton's residence was an impermissible search; and

> II. Whether exigent circumstances allowed officers to enter Hamilton's residence without a search warrant.[6]

[2] We affirm.

---

[1] *See* Ind. Code § 35-47-4-5(c).

[2] *See* Ind. Code § 35-48-4-6.1(b)(2).

[3] *See* Ind. Code § 35-44.1-2-5(a)(1)(A).

[4] *See* Ind. Code § 35-48-4-11(a).

[5] *See* Ind. Code § 35-48-4-8.3(b).

[6] Hamilton contends that the officers' actions also violated his rights under Article I, section 11 of the Indiana Constitution. While Hamilton provides an extended recitation of the relevant law under Article I, section 11, his actual arguments consist of only two sentences. Therefore, Hamilton has waived his claim under the Indiana Constitution for lack of cogent argument. *See Jarman v. State*, 114 N.E.3d 911, 915 n.2 (Ind. Ct. App. 2018), *trans. denied*.

## Facts and Procedural History

[3] On December 21, 2017, Sergeant David Durant ("Sergeant Durant") and Deputy Robert Goodfellow ("Deputy Goodfellow") (collectively, "the officers") went to Hamilton's residence in rural Decatur County to execute an arrest warrant for Jewel Johnson. *Appellant's App. Vol. 2* at 70. Deputy Goodfellow had received a tip that Johnson would be at Hamilton's residence that day. *Id.*; *Tr. Vol. 2* at 6, 8, 33, 35. The arrest warrant was for Level 2 felony dealing in methamphetamine. *Appellant's App. Vol. 2* at 70; *Tr. Vol. 2* at 7. The officers also had two warrants for Johnson for violation of probation for her conviction for possession of methamphetamine in Jackson County. *Appellant's App. Vol. 2* at 70; *Tr. Vol. 2* at 7.

[4] When the officers arrived at Hamilton's home, they noted that the house had only one level and had a wraparound porch that surrounded the entire home. *Id.* at 98-106. The front door was located on the deck area of the wraparound porch. *Id.* at 98, 106. There were other entryways around the house, and there were many large deck chairs sitting on at least two sides of the house. *Id.* at 99-105. The officers approached the front door by climbing the steps closest to the door. *Tr. Vol. 2* at 23. Deputy Goodfellow remained on the wraparound porch by the front door, and Sergeant Durant walked on the wraparound porch to the west side of the house. *Appellant's App. Vol. 2* at 70. Sergeant Durant went to cover the west side of the house because "it's common knowledge that firearms could be used" and to prevent escape from a different exit. *Tr. Vol. 2* at 10.

[5]     As Sergeant Durant looked through a window on the west side of the house, he observed Johnson in the kitchen. *Appellant's App. Vol. 2* at 70-71. She ran toward the front door, and Sergeant Durant radioed Deputy Goodfellow to alert him. *Tr. Vol. 2* at 12. Deputy Goodfellow knocked on the door, Johnson answered the door, and Deputy Goodfellow identified himself. *Id.* at 33. Johnson ran toward the back of the house, and Sergeant Durant then saw Johnson run back into the bedroom and disappear into a bathroom. *Id.* at 33-34; *Appellant's App. Vol. 2* at 71. Sergeant Durant could see a pump shotgun tied with silk ties to the bed in the bedroom. *Appellant's App. Vol. 2* at 71; *Tr. Vol. 2* at 13. He knocked on the bedroom window where he had observed Hamilton and identified himself. *Appellant's App. Vol. 2* at 71. He instructed Hamilton to answer the front door. *Tr. Vol. 2* at 14. Sergeant Durant then joined Deputy Goodfellow at the front of the house. *Appellant's App. Vol. 2* at 71; *Tr. Vol. 2* at 13.

[6]     Deputy Goodfellow continued to knock on the door, and Hamilton answered. *Tr. Vol. 2* at 14, 34. Deputy Goodfellow identified himself and asked that Johnson come to the door. *Id.* at 34. Deputy Goodfellow explained that Johnson was wanted on several felony warrants. *Appellant's App. Vol. 2* at 71. Hamilton said that Johnson was not there. *Tr. Vol. 2* at 14, 34. Deputy Goodfellow asked that Hamilton open the door, and Hamilton complied. *Id.* However, when both officers told Hamilton to have Johnson come to the door, Hamilton again denied that she was there. *Id.* Deputy Goodfellow informed Hamilton that he had seen Johnson, but Hamilton continued to deny she was

there and said the officers could not come into the house without a warrant. *Appellant's App. Vol. 2* at 71; *Tr. Vol. 2* at 34. Deputy Goodfellow then placed Hamilton under arrest for assisting a criminal. *Id.*

[7] Once Hamilton was taken into custody, Sergeant Durant entered the house and went directly to the bedroom where Johnson was last seen. He found her hiding in a closet and arrested her. *Id.* at 15, 22. While in the home, Sergeant Durant observed narcotics and a glass pipe in plain view on a dresser in the bedroom. *Appellant's App. Vol. 2* at 71; *Tr. Vol. 2* at 15, 22. The officers did a protective sweep of the house to ensure no one else was present and exited the home. *Tr. Vol. 2* at 22.

[8] Hamilton consented to a search of the house after being advised of his rights. *Tr. Vol. 2* at 18; *Appellant's App. Vol. 2* at 71. The officers went back into the home and found controlled substances, including methamphetamine, digital scales, and paraphernalia. *Appellant's App. Vol. 2* at 71. The next day, Sergeant Durant applied for a search warrant after discovering that Hamilton had prior convictions that prevented him from having firearms. *Id.* On December 22, 2017, the officers retrieved a .22 caliber single action revolver, a .12-gauge pump shotgun, .12-gauge shotgun shells, and .22 caliber bullets from Hamilton's home. *Id.* at 72.

[9] On December 27, 2017, Hamilton was charged with Count I, possession of a firearm by a serious violent felon, a Level 4 felony; Count II, possession of methamphetamine, a Level 5 felony; Count III, assisting a criminal, a Level 6

felony; Count IV, maintaining a common nuisance, a Level 6 felony; Count V, possession of marijuana, a Class B misdemeanor; and Count VI, possession of paraphernalia, a Class C misdemeanor. *Id*. at 14-15.

[10] On August 31, 2019, Hamilton filed a Motion to Suppress requesting that the court suppress "any and all evidence and fruits thereof gained as a result of the searched on [Hamilton's] residence . . . on or about December 21, 2017 and December 22, 2017." *Id*. at 33. The trial court held a hearing on the motion, and on January 25, 2019, it denied the motion. *Id*. at 58. On February 18, 2019, Hamilton filed a Motion to Certify Order for Interlocutory Appeal, which the trial court granted on February 18, 2019. *Appellant's App. Vol. 2* at 60-62. On March 15, 2019, Hamilton filed a Motion to Accept Interlocutory Appeal with this court, and on April 22, 2019, we denied the motion. *Id*. at 63-66.

[11] On November 18, 2019, Hamilton filed a written waiver of his right to a jury trial and asked to proceed to a bench trial. *Id*. at 67. The parties agreed to a written stipulation of facts in lieu of testimony; the stipulation preserved Hamilton's objections to the admission of evidence that he had highlighted in his motion to suppress. *Id*. at 68. The bench trial occurred on November 25, 2019. *Id*. The trial court found Hamilton guilty of unlawful possession of a firearm by a serious violent felon, possession of methamphetamine, assisting a criminal, possession of marijuana, and possession of paraphernalia. *Appellant's App. Vol. 2* at 107. Count IV, maintaining a common nuisance, was dismissed per the State's request. *Tr. Vol. 2* at 66. On December 19, 2019, Hamilton was

sentenced to an aggregate term of eight years. *Appellant's App. Vol. 2* at 108. Hamilton now appeals.

## Discussion and Decision

[12] Because Hamilton appeals after the entry of a final judgment, we review the trial court's evidentiary ruling for an abuse of discretion. *See Grayson v. State*, 52 N.E.3d 24, 26 (Ind. Ct. App. 2016), *trans. denied*. An abuse of discretion occurs only when the admission of evidence is clearly against the logic and effect of the facts and circumstances, and the error affects a party's substantial rights. *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013). We will not reweigh the evidence, and we resolve any conflicts in the evidence in favor of the trial court's ruling. *J.G. v. State*, 93 N.E.3d 1112, 1119 (Ind. Ct. App. 2018), *trans. denied*. When the challenge to the trial court's ruling is premised on a constitutional violation, the issue is reviewed *de novo* because it raises a question of law. *Pinner v. State*, 74 N.E.3d 226, 229 (Ind. 2017).[7]

## I. Sergeant Durant's Visual Observations Were Not a Search

[13] Hamilton argues that when Sergeant Durant walked to the west side of the house and looked through the window, he committed an impermissible warrantless search of Hamilton's home. Hamilton acknowledges that if police

---

[7] Because the stipulation of evidence preserved Hamilton's objections to the admissibility of evidence, and because the trial court did not revisit its prior ruling as to admissibility of the evidence, we find that there was an implicit ruling by the trial court at the trial stage that the evidence was admissible. Therefore, we apply the standard of review used for reviewing evidentiary rulings in an appeal from a final judgment.

use normal means of ingress or egress to access a building and see something from that vantage point, they have not conducted a search under the Fourth Amendment, thus obviating the need for a search warrant. *See Divello v. State*, 782 N.E.2d 433, 437 (Ind. Ct. App. 2003), *trans. denied*. This is permissible, Hamilton admits, as long as police restrict their access to places that visitors would be expected to go, such as walkways, driveways, and porches. *See id*. Hamilton argues that when Sergeant Durant went to the side of the house and saw Johnson through a window, he went to an area that visitors would not be expected to go. In support, Hamilton claims that his front door was the only common means of access to his house and that there was no evidence that other entries to the house were used by visitors. Thus, he claims Sergeant Durant was not justified in walking to the west side of the house and looking into the home through a window. In Hamilton's words:

> When [Sergeant] Durant left the front door and walked around to the rear of the house and began peering through a bedroom window, he was "no longer in a place where visitors could be expected to go." *See Divello v. State*, 782 N.E.2d 433, 439 (Ind. Ct. App. 2003), *trans. denied*. This initial warrantless entry into the curtilage constituted an illegal search and any evidence observed from that location or further evidence derived from that initial search is inadmissible.

*Appellant's Br.* at 15.

[14]   Under the Fourth Amendment, warrantless searches and seizures inside a home are presumptively unreasonable. *J.K. v. State*, 8 N.E.3d 222, 229 (Ind. Ct. App. 2014). For purposes of the Fourth Amendment, the curtilage, or the area

immediately surrounding and associated with the home, is considered part of the home. *Florida v. Jardines*, 569 U.S. 1, 6 (2013). Thus, the "warrantless entry onto one's curtilage is also presumptively unreasonable." *J.K.*, 8 N.E.3d at 229. The Fourth Amendment, however, does not protect "[w]hat a person knowingly exposes to the public, even in his own home or office." *Katz v. United States*, 389 U.S. 347, 352 (1967). The route a visitor to a residence would use is not private under the Fourth Amendment, and if police take that route for the purpose of making a general inquiry or other legitimate reason, "they are free to keep their eyes open." *Id.* In other words, "an individual does not have a reasonable expectation of privacy with regard to things or activities within a residence that may be observed by persons using their natural senses from places impliedly open to a visitor's entry." *Divello*, 782 N.E.2d at 437. Therefore, if police use normal means of ingress and egress to and from a home for a legitimate purpose, it is not a Fourth Amendment search for the police to see or hear or smell from that vantage point what is occurring inside the home. *Id.*

[15] Here, we reject Hamilton's contention that Sergeant Durant was not in a place where he had a right to be and, therefore, that his observations of the shotgun and Johnson's furtive and frenetic behavior was an impermissible warrantless search under the Fourth Amendment. First, when Sergeant Durant and Deputy Goodman came to Hamilton's home, they were there for a legitimate investigative purpose, i.e., serving an arrest warrant on Johnson. "[P]olice entry onto private property and their observations do not violate the Fourth

Amendment when the police have a legitimate investigatory purpose for being on the property and limit their entry to places that other visitors would be expected to go, such as walkways, driveway, or porches." *Dora v. State*, 957 N.E.2d 1049, 1052-53 (Ind. Ct. App. 2011) (quoting *Trimble,* 842 N.E.2d at 802), *trans. denied*.   Investigation of a tip is legitimate police activity so long as the investigation does not violate the federal constitution.  *Divello*, 782 N.E.2d at 437-38.

[16]  Furthermore, the west side of the house where Sergeant Durant situated himself was an area where visitors, and police, would be expected to go.  Thus, Sergeant Durant's visual observations through the window on the west side of the house were not a search, obviating the need for a search warrant.  This was an area where people could be expected to go based on a variety of features of Hamilton's property.  There were two very wide sets of steps on each front corner of the property, and once a person had climbed those steps, the person would be on the wraparound porch and would be standing just a few feet from Hamilton's front door.  *Appellant's App. Vol. 2* at 99.  The wraparound porch itself was very wide, allowing easy access around the house, and had large deck chairs on two, perhaps even three sides of Hamilton's home, suggesting to a visitor that he or she had free access to all sides of the home.  *Id*. at 99-100, 103, 105-06.  The existence of a back door, which provided a third point of entry in Hamilton's home, also suggested that visitors could be expected to walk around all sides of the house.  *Id*. at 106.  Furthermore, the home appeared have a fourth access point in the form of a large, double-paned sliding glass door.  *Id*.

at 104. Hamilton argues that because there were no signs directing visitors to enter his home through any access point other than the front door, visitors would not be expected to walk on all sides of the home. However, the lack of signs indicating that visitors could not walk around the house – and the aforementioned characteristics of the house – support the reasonable inference that visitors could reasonably be expected to walk around all sides of Hamilton's home. *Id*. at 99-106.

[17] Hamilton claims that visitors rarely, if ever, actually entered his home via any means of entry other than his front door. Thus, he claims that the west side of the house where Sergeant Durant looked through a window and saw Johnson was not a place where people could be expected to go, and, therefore, Sergeant Durant's visual observations were an impermissible warrantless search. However, a place a person could reasonably be expected to go can be established by implication: "[A]n individual does not have a reasonable expectation of privacy with regard to things or activities within a residence that may be observed by persons using their natural senses from places *impliedly* open to a visitor's entry." *Divello*, 782 N.E.2d at 437 (emphasis added). Therefore, whether visitors actually entered Hamilton's home through points of access other than the front door is immaterial. The question is whether the features of Hamilton's home created an implication that visitors, and police officers such as Sergeant Durant, could be expected to walk around all sides of Hamilton's home. We find that the evidence supports such an implication. Therefore, we reject Hamilton's claims that Sergeant Durant's visual

observations in the home were an impermissible warrantless search and that all evidence seized subsequent to Sergeant Durant's visual observations should be suppressed as fruits of an illegal, warrantless search.

## II.

## Exigent Circumstances Allowed Entry into Hamilton's Home

[18] Hamilton argues that the exigent circumstances rule did not allow the officers to enter his home because: 1) the officers had no right to enter the curtilage of his home; and 2) any exigent circumstances that may have arisen, such as the risk that Johnson would flee, were created by the officers' illegal entry onto his curtilage and Sergeant Durant's illegal warrantless search of Hamilton's home that occurred when Sergeant Durant looked through a window to see inside Hamilton's home.

[19] Under the exigent circumstances rule, a warrantless entry into a dwelling may be justified by hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling. *Minnesota v. Olson*, 495 U.S. 91, 100 (1990). The exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable; that is, even if police behavior was the catalyst for the exigent circumstances, no warrant is required for the search as long as the police did not create the exigency by engaging in conduct that violates the Fourth Amendment. *Kentucky v. King*, 563 U.S. 452, 462 (2011).

[20] Here, the situation was ripe for exigent circumstances because Johnson posed a potential threat to the officers; she was wanted on serious drug charges and had two arrest warrants because of probation violations. *Appellant's App. Vol. 2* at 70; *Tr. Vol. 2* at 7. Given Johnson's criminal history, Sergeant Durant understandably positioned himself on the west side of Hamilton's house to thwart a potential escape by Johnson. *Tr. Vol. 2* at 10. Actual exigent circumstances arose once Johnson realized that Sergeant Durant had seen her; she began to behave erratically, running to and fro in the house, coming near the shotgun in the bedroom, and eventually hiding in the closet. *Appellant's App. Vol. 2* at 71; *Tr. Vol. 2* at 12-13, 18, 77. Before hiding in the bathroom, Johnson was in the bedroom with easy access to the shotgun that was tied to the bed. *Appellant's App. Vol. 2* at 71; *Tr. Vol. 2* at 13, 33-34. Hamilton's behavior also helped create exigent circumstances; he lied several times to the officers when he told them that Johnson was not in his home even though the officers knew otherwise. *Appellant's App. Vol. 2* at 71; *Tr. Vol. 2* at 14, 34. These factors created exigent circumstances in at least two ways: 1) they may have prompted Johnson to flee; and 2) they created a risk of danger to the officers as well as Hamilton and Johnson. *See Olson*, 495 U.S. at 100.

[21] Hamilton's arguments that the officers' conduct was not justified by exigent circumstances are unavailing. First, we can quickly reject Hamilton's claim that the officers had no legal authority to enter Hamilton's curtilage. In the previous section of this decision, we found that the officers did not violate

Hamilton's Fourth Amendment rights by entering his curtilage or by looking into his home through a window.

[22] Second, even if the officers' actions triggered the exigent circumstances, they did not do so by engaging in conduct that violated the Fourth Amendment. *See King*, 563 U.S. at 462. The officers had the right to station themselves at various places on the wraparound porch and look through Hamilton's windows. *See id*; *see also Dora*, 957 N.E.2d at 1052-53. Therefore, even if the officers' actions prompted the exigent circumstances, their actions were not grounds to suppress the evidence because they did not engage in conduct that violated or threatened to violate the Fourth Amendment. *See King*, 563 U.S. at 462. In sum, the officers' entry into Hamilton's home was justified by exigent circumstances. [8]

[23] Affirmed. [9]

Najam, J., and Brown, J., concur.

---

[8] Hamilton also argues that the consent he gave to the officers to search his house was not voluntary, arguing only that "the consent was a consequence of the prior illegal entry and thus cannot be considered voluntary." *Appellant's Br*. at 18. Because we have determined that the entry into Hamilton's home did not violate his Fourth Amendment rights, this argument is without merit, and we need not address it at more length.

[9] Hamilton also argues that because the arrest warrant was for Johnson, not himself, the arrest warrant did not authorize entry into his home. Because we have determined that the officers' entry into Hamilton's home was justified by the exigent circumstances rule, we need not address this issue.