**John V. DORA, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 07A01–1102–CR–51.**

Court of Appeals of Indiana.

Dec. 6, 2011.

Rehearing Denied Feb. 14, 2012.

David C. Grupenhoff, Thomas M. Barr & Associates, Nashville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, John Dora (Dora), appeals the trial court's denial of his motion to suppress evidence.

We affirm.

*ISSUE*

Dora raises two issues for our review, which we consolidate and restate as the following single issue: Whether the trial court abused its discretion when it denied his motion to suppress evidence.

*FACTS AND PROCEDURAL HISTORY*

On May 26, 2009, a party celebrating Michael Shearer's (Shearer) birthday was held on Dora's property in Brown County. Dora's property is essentially an isolated clearing in the woods. Access to the property consists of a long, steep driveway off of Valley Branch Road that leads up a hill and spills out onto a concrete pad, with a house and a large barn at one end and gravel at the other end of the concrete pad. A large, white recreational vehicle (RV) was parked on the concrete pad next to the barn. A small, black mobile trailer was parked some distance away from the RV, but partially on the concrete pad and partially on the gravel. Off the driver's side of the RV, separated by a pathway of about three feet, were terraced flower beds. Shearer lived in the house, and Dora, when he was in town, lived in the RV, but also maintained an office in the barn. The party was attended by Dora, Shearer, and a few friends. Later in the evening, Holly Parker (Parker) arrived with two other guests.

Parker arrived at the party intoxicated. Dora did not wish to be around an intoxicated Parker and hid from her in the barn. Parker began searching for Dora around the property. Parker began beating and kicking the RV and the trailer while yelling for Dora to come out of hiding. Not finding Dora, Parker returned to the RV and went inside, using the door located on the passenger side. Parker began throwing out Dora's goods, and continued until she was restrained by Shearer. During the scuffle with Shearer, Parker's cell

phone somehow dialed her daughter, Kristina Agrue's (Agrue), cell phone. Parker then left the party and headed down the driveway onto Valley Branch Road, yelling expletives along the way.

Although Agrue did not speak with Parker, when she heard Parker yelling in the background she believed that Parker was being held against her will and might have been a victim of a battery. Agrue drove to Dora's property to find Parker. There, Agrue was told Parker had left, then got into a dispute with Shearer, and later departed. Agrue contacted the Brown County Sheriff's Office to report the incident. Brown County Sheriff's Deputy Ron Followell (Deputy Followell) was dispatched to meet Agrue. Agrue told Deputy Followell that she believed Parker was at Dora's property and in trouble. Agrue explained that she went to Dora's to find Parker, but ended up in an altercation and left. Agrue filled out a voluntary statement describing that she believed Parker was in trouble and describing her visit to Dora's property to look for Parker. Agrue also indicated that there "definitely" was marijuana present at Dora's property. Agrue later found Parker and drove back to Dora's property a couple of times and then departed.

Meanwhile, Deputy Followell enlisted the support of two other officers, Brown County Sheriff's Deputy Bill Southerland (Deputy Southerland) and Indiana Conservation Officer Jason Lee (Officer Lee), and traveled to Dora's to investigate Agrue's complaint. Deputy Followell and the other Officers parked at the bottom of the driveway and walked up the driveway to speak to Dora. Dora and Shearer were sitting in front of a portable fire pit when the Officers arrived. After telling the Officers that Parker left earlier, they excitedly explained that Parker was upset that Dora was hiding from her and that she looked around Dora's property for Dora.

Dora explained that Parker had beaten and kicked the RV and the trailer looking for Dora, and that Parker later entered the RV and threw items outside the RV out onto the clearing.

It was dark outside and all Officers had flashlights. Deputy Followell testified that Dora and Shearer explained that Parker went all around the RV. Deputy Followell "asked if he could come up and look at the damage," and Dora "said yes." (Transcript p. 269). Dora "took [Deputy] Followell over to show him the damage." (Tr. p. 271). Shearer showed the Officers "a footprint on the back of the trailer and where [Parker] kicked the RV." (Tr. p. 215). Deputy Followell testified that there were creases and black markings on the RV, specifically on the rear, passenger side, and front of the RV. The passenger side of the RV contained the main entrance to the RV.

At some point, the tour concluded. While Dora, Shearer, and Deputy Followell walked back to the fire pit, Deputy Southerland and Officer Lee stayed at the front of the RV. Officer Lee examined three sides of the trailer and found footprints on the back end of the trailer. Officer Lee then went to examine the RV for damage to the front and the driver's side. As Officer Lee shined his flashlight to the immediate right of the RV, he saw plants in the flower bed. Officer Lee recognized the plants as marijuana. While Dora and Shearer engaged in small talk with Deputy Followell, Deputy Southerland walked over to Deputy Followell and told him that Deputy Followell needed to come back to the RV and take a look. Deputy Followell returned to the RV with Dora and Shearer in tow and saw several plants, which he immediately recognized as marijuana plants.

Dora and Shearer were placed under arrest and read their Miranda rights.

Dora gave his consent to a search of his trailer and RV.[1] Two additional marijuana plants were found in a pot located nearby the fire pit and fifty-nine marijuana plants were found in the flower bed adjacent to the RV.

On May 27, 2009, the State filed an Information charging Dora with Count I, possession of marijuana, a Class A misdemeanor, Ind.Code § 35–48–4–11(2); Count II, possession of marijuana, a Class A misdemeanor, I.C. § 35–48–4–11(1); Count III, possession of paraphernalia, a Class A misdemeanor, I.C. §§ 35–48–4–8.3(a)(1); 35–48–4–8.3(b).

On November 16, 2009, Dora filed a motion to suppress evidence, alleging violations of both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. On June 7 and October 25, 2010, hearings were held. On November 18, 2010, the trial court granted Dora's motion to suppress in part suppressing evidence of the marijuana and paraphernalia found in the RV, but denying suppression of the marijuana found in the flower beds. On January 14, 2011, the trial court certified the November 18th Order for interlocutory appeal. On April 1, 2011, this court accepted the interlocutory appeal.

Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Dora argues that the trial court abused its discretion by denying his motion to suppress. He asserts that the warrantless search of his property violated his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

### I. Standard of Review

We review a denial of a motion to suppress similar to other sufficiency matters. *Smith v. State,* 953 N.E.2d 651, 655 (Ind. Ct.App.2011). We do not reweigh the evidence, but consider conflicting evidence in the light most favorable to the trial court's ruling. *Id.* Uncontested evidence, however, is viewed in favor of the defendant. *Id.*

### II. Fourth Amendment

■ The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures; its protections extend to the states through the Fourteenth Amendment. *Lindsey v. State,* 916 N.E.2d 230, 238 (Ind. Ct.App.2009), *trans. denied.* "[A] search arises out of an intrusion by a governmental actor upon an area in which a person maintains a 'reasonable expectation of privacy.'" *Holder v. State,* 847 N.E.2d 930, 935 (Ind.2006) (quoting *Katz v. U.S.,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). A constitutionally protected reasonable expectation of privacy exists where there is both a subjective expectation of privacy and societal recognition that such expectation of privacy is reasonable. *Id.* at 936.

■ "The land immediately surrounding and associated with the home, the curtilage, also merits Fourth Amendment protections that attach to the home." *Id.* (citing *Oliver v. U.S.,* 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). The Fourth Amendment does not protect "activities or items that, even if within the curtilage, are knowingly exposed to the public." *Trimble v. State,* 842 N.E.2d 798, 802 (Ind.2006). Further, "police entry onto private property and their observations do not violate the Fourth Amend-

1. The trial court suppressed evidence of additional marijuana and paraphernalia found in the RV due to failure to advise Dora of his *Pirtle* warnings prior to searching the RV. *See Pirtle v. State,* 263 Ind. 16, 323 N.E.2d 634, 640 (1975).

ment when the police have a legitimate investigatory purpose for being on the property and limit their entry to places that other visitors would be expected to go, such as walkways, driveway, or porches." *Id.*

In determining that the Officers did not conduct a search, the trial court concluded the following:

> The [O]fficers' initial entry onto [Dora's] property was for a legitimate reason, to conduct an investigation. While there, they continued their investigation by looking at the RV. The question is whether in walking and looking behind the RV, the [O]fficers limited their investigation to "normal and recognized means of access reasonable under the circumstances," or whether they exceeded the permissible scope of their investigation and "failed to limit their visit to areas that could reasonably have been viewed as open to them" for their legitimate business. *Divello v. State,* 782 N.E.2d 433, 438 (Ind.Ct.App.2003) [, *trans. denied* ].
>
> Even though they were never specifically directed to walk all the way around the RV by [Dora] or [Shearer], the [O]fficers had been told [Parker] walked around the RV. The [O]fficer had not confirmed whether [Parker] had been located or not. The [O]fficers never left the concrete and gravel portions of the driveway and they did not move or uncover any items. They did not enter or cross any fences or gates. Under the circumstances the [O]fficers' actions were reasonable, and the motion to suppress is denied as to evidence of the alleged marijuana plants found [outside] the RV.

(Appellant's App. pp. 131–32).

Dora acknowledges that initially the Officers were properly on the curtilage to investigate Parker's welfare. However, Dora argues that the Officers, particularly Officer Lee, exceeded the scope of this permissible intrusion by venturing behind the RV and discovering the marijuana plants. Citing to prior decisions of this court, Dora argues that once the implied invitation for the police to come onto private property has terminated, an analysis of the reasonableness of access routes used by the Officers, as was done by the trial court, no longer applies.

■ We find that this argument misses the point. While the implied invitation extended to police to visit private property for investigatory purposes requires that they do not stray from those access routes ordinarily expected to be used, the record here reflects that Dora expressly invited the Officers to examine the damage caused by Parker to the RV and the trailer. This additional step converted the implied invitation into an express invitation for the Officers to view the damage to the RV and trailer. Although Dora protests that neither he nor Shearer ever mentioned any damage to the RV's driver's side, we find this argument unpersuasive. Dora knowingly exposed the trailer to the Officers and therefore cannot persuasively argue that he had a privacy interest on the driver's side of the RV. Had Dora simply told the Officers that Parker was not on the property and refrained from describing the damage to the RV and the trailer, the Officers would have arguably fulfilled the purpose of their visit, and been required to depart Dora's property. *See Divello,* 782 N.E.2d at 438.

In *Divello,* we found that the police violated Divello's Fourth Amendment rights by conducting a search of the property after determining Divello was not at home. *Divello,* 782 N.E.2d at 439. Here, not only was Dora present at the property when the police arrived, but he guided the Officers through his property to point out

where Parker had caused damage to his trailer and RV. Moreover, Dora's driveway is a recognized means of access to Dora's property, and the Officers "never departed from the concrete and gravel portions of the driveway." (Appellant's App. p. 131).

Dora next points to *Lundquist* to illustrate that "the implied invitation exists to allow police and others to contact the occupants of the property, not to search for evidence." [2] (Appellant's Br. pp. 15–16). In *Lundquist,* the police were directed to Lundquist's property in response to 911 calls about a domestic dispute between Lundquist and his sister. *Lundquist v. State,* 834 N.E.2d 1061, 1068–69 (Ind.Ct. App.2005), *trans. denied.* While entering the property to look for Lundquist, the police noticed marijuana plants, and later obtained a search warrant. *Id.* at 1069. Distinguishing *Divello,* we noted that a legitimate reason existed for the police to remain on the property after determining that no one was at home, namely, that Lundquist was hiding on the property, and thereafter the discovery of marijuana in plain view did not constitute an unconstitutional search. *Id. Lundquist* possesses a number of similarities to this case. As in *Lundquist,* we find that here the Officers found the marijuana in plain view while they were legitimately on Dora's property.

The Officers approached Dora's property in response to Agrue's complaint that she and her mother were involved in a disturbance on Dora's property. After being told that Parker was no longer there, Dora and Shearer complained about Parker's antics and pointed out the damage Parker had caused to the RV and the trailer. By inviting the Officers to view the damage to the trailer and the RV, Dora extended whatever implied invitation existed to remain on the curtilage when he led the Officers to the RV and the trailer.[3]

On these facts, we cannot say that Officer Lee's conduct in walking around to the driver's side of the RV was incompatible with this legitimate purpose so as to transform his observation of the marijuana into an unconstitutional search under the Fourth Amendment.[4] As a result, we find that the trial court did not abuse its discretion by denying Dora's motion to suppress on this basis.

### III. *Article 1, Section 11 of the Indiana Constitution*

Analyzing Dora's claim under Article 1, Section 11 of the Indiana Constitution yields the same result. Article 1, Section 11 provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unrea-

---

**2.** Dora also cites *Shultz v. State,* 742 N.E.2d 961, 965 (Ind.Ct.App.2001), *trans. denied,* in support of this proposition. In *Shultz,* we found the intrusion upon the curtilage to be permissible, but taking an additional step to "expose something previously hidden to police" transformed the observation of a suspected stolen semi-tractor in plain view into a search, for which a warrant was required. *Id.* Here, as noted by the trial court, Officer Lee did not expose anything uncovered.

**3.** Dora cites to two federal cases in support of his argument that the Officers conducted a warrantless search by looking behind the RV. However, these cases are factually distinct from the facts here. *See U.S. v. Struckman,*

603 F.3d 731, 742 (9th Cir.2010) (police entry onto the curtilage based upon a mistaken belief that the owner was trespassing on his own property) and *U.S. v. Taylor,* 722 F.Supp.2d 937, 946 (W.D.Tenn.2010) (owner did not extend an invitation to the police to search curtilage).

**4.** Dora also argues that his comments to the Officers should be analyzed under the consent exception to the warrant requirement. However, "an issue not raised in an appellant's brief may not be raised for the first time in a reply brief." *Chupp v. State,* 830 N.E.2d 119, 126 (Ind.Ct.App.2005). We therefore decline to consider this argument.

sonable search or seizure, shall not be violated[ . . . ]." Though tracking the language of the Fourth Amendment, we conduct a separate analysis for alleged violations under Article 1, Section 11. *Trimble,* 842 N.E.2d at 803. This analysis focuses on whether "the actions of the police officer" are reasonable under the totality of the circumstances, rather than upon a person's reasonable expectation of privacy. *Id.* Reasonableness is considered in light of three factors: 1) "the degree of concern, suspicion, or knowledge that a violation has occurred:" 2) "the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities;" and 3) "the extent of law enforcement needs." *Id.* (internal quotations omitted).

The Officers went to Dora's property to investigate Parker's welfare after receiving a report from Agrue that Parker and Agrue may have been victims of a battery. We find this sufficient indication of a concern that a violation had occurred. Also, "[p]olice are authorized to conduct routine preliminary investigations, including calling on private citizens through normal means of approach to residences or other structures." *Id.* Here, as the trial court noted, the Officers had simply entered onto the driveway to question Dora and Shearer regarding Parker's welfare and thereafter "never left the concrete and gravel portions of the driveway." (Appellant's App. p. 131). The Officers did not enter any residential dwelling on the property, including Dora's RV, prior to the discovery of the marijuana behind the RV. Thus, the degree of intrusion here was minimal. By complaining that Parker had damaged the trailer and RV, Dora exacerbated the Officers' need to confirm what exactly occurred, including the extent of damage she was alleged to have caused to the RV and the trailer. The totality of circumstances here therefore demonstrates that the Officers' actions were reasonable.

## CONCLUSION

Based on the foregoing, we find that the trial court did not abuse its discretion when it denied Dora's motion to suppress evidence.

Affirmed.

NAJAM, J. and MAY, J. concur.