**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Aug 06 2012, 8:55 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**F. THOMAS SCHORNHORST**
Oxford, Mississippi

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JANET M. WRIGHT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 11A04-1109-CR-506 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLAY SUPERIOR COURT
The Honorable J. Blaine Akers, Judge
Cause No. 11D01-0906-FD-244

**August 6, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

The police went to Janet M. Wright's house in search of Jesse West. Jesse was not there, but during their visit the police found marijuana and paraphernalia. The State charged Wright with multiple offenses, and she filed a motion to suppress all evidence discovered by the police. The trial court denied Wright's motion in part, deferred ruling on the remainder of the motion, and granted Wright permission to pursue this interlocutory appeal. We affirm and remand.

## ISSUE

Wright raises three issues, which we consolidate and restate as: whether the trial court erred by denying in part her motion to suppress.

## FACTS AND PROCEDURAL HISTORY

On June 7, 2009, Clay County Sheriff's Deputies James Switzer and Casey Judge went to Wright's house in Coalmont, Clay County, Indiana. Wright lived with Scott West. The deputies were looking for Scott's son, Jesse.

A key question is why the deputies believed that Jesse might be found at Wright's house. In early 2009, Deputy David Haddix of the Sullivan County Sheriff's Department found a stolen van in rural Clay County near Coalmont, just east of the Sullivan County line, and had it towed to an impound lot. On or around June 1, 2009, the owner of the lot informed Haddix that Jesse's identification had been found in the van. The identification indicated that Jesse lived in Coalmont, but the address provided on the identification was not the address of Wright's house. Haddix consulted electronic records and determined that Jesse had an active misdemeanor arrest warrant from Greene County.

2

On June 4, 2009, Haddix called the Clay County Sheriff's Department and talked with a dispatcher about Jesse. During the discussion, they determined that Jesse had a second active misdemeanor arrest warrant from another county. They also discussed a possibility that Jesse could be found at Scott's house in Coalmont. After this conversation, the dispatcher issued an e-mail to all Clay County Sheriff's deputies. The e-mail advised that Jesse was wanted on two warrants and in connection with a stolen vehicle investigation. The e-mail further advised that Jesse "is supposed to be living with his dad, Scott West. Lives in [a] run down old house on Jason St[.] in Coalmont." Depo. of Cindy Judd, Ex. 1.

Switzer received the e-mail and examined the warrants. One of the warrants listed Wright's address as one of Jesse's residences. In addition, Switzer was acquainted with Nancy Fulford, the mother of two of Jesse's children. One of the warrants against Jesse was for non-payment of child support to Fulford, and she had discussed with Switzer Jesse's history of non-payment. She told him that Jesse would run from law enforcement if given a chance.

Based on this information, Switzer and Judge went to Wright and Scott's house as noted above. The house is on the south side of the street, and a driveway runs along the house's west side. A porch and the front door are located on the west side of the house. Switzer walked up to the front door via the driveway and directed Judge to walk to the southwest corner of the house so that she would see if someone ran out of the back of the house into nearby woods. The south end of the porch was blocked by a grill, and a tall wooden lattice extended from the west side of the house into the backyard, so Judge

3

circled around the grill, a trash can and various other items and walked fifteen feet into the side yard where she could see past the lattice into the backyard. Judge did not enter the backyard and remained in view of Switzer.

When Switzer walked up to the front door, he smelled marijuana. He knocked several times, but no one came to the door. As Switzer was knocking, Judge looked into the backyard and saw several milk jugs on the ground along the side of the house. The tops of the jugs had been cut off, and plants were growing inside them. Judge identified the plants as marijuana and notified Switzer. Switzer walked over to Judge, and they approached the jugs. Switzer confirmed that the plants were marijuana, and he radioed for additional officers to secure the property.

Next, Scott arrived. He allowed the officers to enter the house and retrieve Wright, who had been asleep inside up to this point. Jesse was not at the house. The police removed Scott and Wright from the house, and Scott signed a consent form granting permission to the police to search the house and outbuildings. During the subsequent search the police found additional marijuana plants in the house, along with paraphernalia.

The State charged Wright with possession of marijuana, a Class D felony, Ind. Code § 35-48-4-11 (1983); maintaining a common nuisance, a Class D felony, Ind. Code § 35-48-4-13 (2001); and possession of paraphernalia, a Class A misdemeanor, Ind. Code § 35-48-4-8.3 (2003). Wright filed a motion to suppress all evidence discovered during the deputies' visit to her property. The trial court denied Wright's motion to suppress as to the marijuana that was found beside the house. The trial court deferred its ruling as to

4

all evidence found inside the house and outbuildings, determining that it had insufficient evidence to address that matter.  Wright requested leave to pursue an interlocutory appeal, and the trial court granted leave.  Next, she asked this Court to accept her appeal, and we granted Wright's motion.

## DISCUSSION AND DECISION

The standard of appellate review of a trial court's ruling on a motion to suppress is similar to other sufficiency issues.  *Pruitt v. State*, 934 N.E.2d 767, 768 (Ind. Ct. App. 2010), *trans. denied.*  We determine whether substantial evidence of probative value exists to support the trial court's ruling.  *Id.*  We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling, but we also consider the uncontested evidence favorable to the defendant.  *Shell v. State*, 927 N.E.2d 413, 418 (Ind. Ct. App. 2010).

Wright argues that the deputies' discovery of the marijuana plants beside her house and the additional items inside her house and outbuildings was the result of a search that violated her federal and state constitutional protections against illegal search and seizure.  We address each provision in turn.

## I. THE FOURTH AMENDMENT

The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  This federal right to be free of unreasonable searches and seizures applies to the states through the Fourteenth Amendment.  *Duran v. State*, 930 N.E.2d 10, 14 (Ind. 2010).  Searches performed by government officials without warrants are per se

5

unreasonable under the Fourth Amendment, subject to a few specifically established and well-delineated exceptions. *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006). When a search or seizure is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search or seizure. *Boggs v. State*, 928 N.E.2d 855, 863 (Ind. Ct. App. 2010), *trans. denied*. The touchstone of the Fourth Amendment is reasonableness, and reasonableness is measured in objective terms by examining the totality of the circumstances. *Rush v. State*, 881 N.E.2d 46, 50 (Ind. 2008).

Here, Wright asserts that the deputies had no legitimate reason to enter her property and that Switzer was pursuing a personal mission based on his acquaintance with Fulford. However, the deputies had been informed that Jesse could be at Wright's property, and there were pending misdemeanor arrest warrants for him. Furthermore, Jesse was wanted for questioning in connection with a vehicle theft. Switzer reviewed the warrants before going to Wright's house, and one of them listed Wright's address as one of Jesse's residences. Switzer Depo. p. 24, Judd Depo. Ex. 3. In addition, Switzer's discussions with Fulford provided evidence that Jesse had not addressed his delinquent child support payments. Therefore, the deputies had legitimate law enforcement reasons to enter Wright's property. *See Boggs*, 928 N.E.2d at 864 (holding that officers had a valid reason to enter Boggs' property because they wanted him to come pick up his daughter and because they discovered there was a pending warrant for his arrest).

Next, Wright contends that Judge engaged in an illegal search by entering the side yard of her house, from where Judge saw the marijuana in the backyard. A search arises

6

out of an intrusion by a governmental actor upon an area in which a person maintains a reasonable expectation of privacy. *Dora v. State*, 957 N.E.2d 1049, 1052 (Ind. Ct. App. 2011), *trans. denied*. The land immediately surrounding and associated with a home, the curtilage, is also subject to the Fourth Amendment protections that attach to the home. *Boggs*, 928 N.E.2d at 863. When the police come onto private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (such as walkways, driveways, and porches), observations made from such vantage points are not covered by the Fourth Amendment. *Shultz v. State*, 742 N.E.2d 961, 964 (Ind. Ct. App. 2001), *trans. denied*.

Here, the officers had a reasonable belief that Jesse could be found on the property and had been advised that he would flee from law enforcement if possible. When the deputies entered Wright's property, Switzer approached the main door of the house and directed Judge to stand at the southwest corner of the house so that she would see if anyone ran out by another exit and entered the woods behind the house. Judge walked past the end of the driveway, fifteen feet into the side yard, where she could see the backyard. However, she did not enter the backyard, because she stood where she and Switzer could see each other. Judge may have intruded upon the curtilage of the home, but under these facts we cannot say that her attempt to spot anyone who might attempt to flee was a constitutionally impermissible search under the Fourth Amendment. *See Lundquist v. State*, 834 N.E.2d 1061, 1069 (Ind. Ct. App. 2005) (determining that an officer's intrusion into Lundquist's backyard was permissible because the officer was searching for Lundquist, not contraband, and had reason to believe Lundquist would be

found on the property); *see also Trimble v. State*, 842 N.E.2d 798, 802 (Ind. 2006) (determining that an officer's approach of a doghouse that was located three to five feet from Trimble's driveway was permissible under the Fourth Amendment), *clarified on reh'g*, 848 N.E.2d 278 (2006).

Wright cites *Divello v. State*, 782 N.E.2d 433 (Ind. Ct. App. 2003), *trans. denied*, but that case is distinguishable. In that case, officers acting on a report that Divello was dealing marijuana at his residence went to his house and knocked at his front door and back door. When they received no answer, the officers walked through Divello's backyard to access another house that Divello owned, walked around that house, and knocked on all of the doors there. They saw a truck parked behind that house, examined it, and smelled marijuana coming from the corner of the house closest to the truck. After getting a search warrant, the officers discovered marijuana in the house, but a panel of this Court held that the marijuana had to be suppressed because the officers improperly walked through Divello's backyard and the backyard of his other house, exceeding the area where visitors could reasonably be expected to go. *See id.* at 439.

By contrast, in this case Judge did not enter Wright's backyard. Instead, she stood in a side yard near the driveway where she could look into the backyard but did not enter that area. Therefore, *Divello* is not controlling.[1]

Next, Wright claims that even if it were permissible for Judge to stand where she could see into the backyard, Judge and Switzer violated the Fourth Amendment by

---

[1] Wright further argues that the officers lacked exigent circumstances to view or enter her backyard. It is unnecessary to address this argument due to the manner in which we have resolved her Fourth Amendment claim.

approaching the marijuana plants once Judge identified them. The State contends that the deputies appropriately approached and seized the plants under the "plain view" doctrine.

Indiana law enforcement officials do not need a warrant to seize incriminating evidence under the plain view doctrine if the following conditions are met: (1) police have a legal right to be at the place from which the evidence can be plainly viewed; (2) the incriminating character of the evidence is immediately apparent; and (3) police have a lawful right of access to the object itself. *Eaton v. State*, 889 N.E.2d 297, 301 (Ind. 2008).

Here, we have already determined that Judge did not violate the Fourth Amendment by standing where she could see into the backyard. Furthermore, Judge recognized the plants as marijuana, a controlled substance. Finally, the marijuana plants were not locked within a building or vehicle, but rather were sitting outside. We conclude that the officers properly approached and seized the plants. *See Redden v. State*, 850 N.E.2d 451, 460 (Ind. Ct. App. 2006) (affirming officers' discovery of materials used to manufacture methamphetamine where the materials were in plain view when the officers went to the back porch of Redden's house), *trans. denied*. We conclude that the trial court did not err by denying Wright's motion to suppress with respect to the marijuana the deputies discovered in the backyard of Wright's house.

Wright argues that any other items found within her house and outbuildings must be suppressed because Scott's consent to search was invalid. However, the trial court specifically declined to rule upon Wright's motion to suppress with respect to items found within the house and outbuildings, noting: (1) the court could not determine

whether Scott's consent could be "used for or against" Wright; and (2) no evidence was provided to the court as to whether Wright consented to the search. Appellant's App. p. 82. In the absence of a ruling by the trial court, there is nothing for us to review on this point. Wright may seek appellate review once the trial court issues a ruling on the portion of her motion to suppress pertaining to the search of the house and the outbuildings.

## II. ARTICLE 1, SECTION 11

Wright claims that the officers' entry upon her property, including Judge's movement into a side yard where she could see the backyard, was illegal and unreasonable under the Indiana Constitution. Article 1, Section 11 of the Indiana Constitution provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated . . . ." This provision tracks the language of the Fourth Amendment, but we conduct a separate analysis for alleged violations of Article 1, Section 11. *Dora*, 957 N.E.2d at 1055.

The purpose of Article 1, Section 11 is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001). This provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. *Id.* Our analysis focuses on whether the actions of the police officer are reasonable under the totality of the circumstances, rather than upon a person's reasonable expectation of privacy. *Dora*, 957 N.E.2d at 1055. Reasonableness is considered in light of three factors: (1) the degree of

concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id.*

In this case, the deputies had a high degree of knowledge that a violation had occurred because Switzer had received an e-mail from a dispatcher regarding Jesse and had personally reviewed two misdemeanor arrest warrants, one of which listed Wright's address as one of Jesse's residences. Furthermore, Switzer knew from talking with Fulford that Jesse had failed to fulfill his court-ordered child support obligations, so he had independent evidence that the basis for Jesse's arrest warrant for misdemeanor failure to pay child support was unresolved. Finally, the deputies were aware that Jesse was a suspect in a vehicle theft. Thus, the deputies had reasons to look for Jesse and had reason to believe that he might be on Wright's property.

In addition, the degree of intrusion was low. Switzer and Judge approached the house via the driveway, and Switzer walked up to the front door while he directed Judge to position herself so that she could see around the corner of the house. Although Judge walked fifteen feet into a side yard, she did not enter the backyard. The degree of intrusion is closer to *Lundquist*, 834 N.E.2d at 1069, where an officer entered a backyard, than to *Divello*, 782 N.E.2d at 435-36, where the officers walked through a backyard, into the backyard of a second house owned by Divello, and around the second house's curtilage while searching for Divello.

Finally, Judge's entry into the side yard was justified by law enforcement needs. Fulford had told Switzer that Jesse would run from the police if given a chance.

11

Furthermore, Switzer thought it was necessary to ensure that no one surreptitiously approached him or Judge. Balancing these factors, we conclude that the officers' entry onto the property, including Judge's movement into the side yard where she saw the marijuana, was not an unreasonable search in violation of Article 1, Section 11. *See Redden*, 850 N.E.2d at 461 (determining that the officers' entry onto the property to talk with the property owner, which led to the officers' discovery of materials related to drug manufacturing on the porch, was reasonable under Article 1, Section 11).

Wright also asks this Court to consider the validity of Scott's consent to search the house and outbuildings under the Indiana Constitution. Given that the trial court expressly delayed a ruling upon this portion of Wright's motion to suppress, we may not consider that issue at this time.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court and remand for further proceedings consistent with this opinion.

Affirmed and remanded.

MAY, J., and DARDEN, Sr.J., concur.