Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 21 2013, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FRANCIS NAPIER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 15A04-1209-CR-460 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DEARBORN SUPERIOR COURT
The Honorable Jonathan N. Cleary, Judge
Cause No. 15D01-1112-FD-614

**May 21, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Francis Napier (Napier), appeals the trial court's denial of his motion to suppress.

We affirm.

## ISSUE

Napier raises three issues for our review, one of which we find dispositive and restate as follows:  Whether the trial court abused its discretion when it denied his motion to suppress evidence.

## FACTS AND PROCEDURAL HISTORY

On December 11, 2011, Napier and Nichelle Hartman (Hartman) drove in Napier's truck to the Hollywood Casino in Lawrenceburg, Indiana.  They rented a hotel room together with Hartman co-signing for the room and receiving a key.  While at the casino, Napier attacked a man who had been talking to Hartman, knocking him down and pulling off his shirt.  Indiana Gaming Commission Officers Terry Nickel (Officer Nickel) and Jeff Davies (Officer Davies) were summoned to the casino floor in response.  When the Officers found Napier, casino security had restrained him and he was speaking to a crying Hartman.   Officer Nickel handcuffed Napier and left to review surveillance video of the incident.  Hartman told Officer Davies that she was Napier's girlfriend and that he had been smoking marijuana, more of which could be found in Napier's truck.  Officer Davies relayed this to Officer Nickel who later was also told by Hartman about the

2

marijuana. Napier was eventually taken to jail after being arrested for public intoxication and disorderly conduct.

Hartman told the Officers that she wanted to leave but had driven with Napier in the truck, which had been left with valet parking. Officer Nickel confirmed that Napier had registered for a hotel room and Hartman co-signed for a key to the room. Hartman told the officers that her cell phone was dead and that she needed to retrieve a charger from the truck along with her personal items. Hartman did not have the valet parking ticket nor knew where the truck was parked. Officer Nickel took Hartman to the valet and ordered the valet to bring Napier's truck around to the front of the casino where a surveillance camera was located.

Hartman entered the truck and began looking for the charger as well as her clothes and other personal effects. The passenger door was left ajar and Officer Nickel stood outside, between the door and the frame, using his flashlight to illuminate the truck's interior. As Hartman rummaged around the truck she came to the center console compartment which was closed. After electing not to open it at first, she later opened the compartment exposing hemostats, rolling papers, and a bag of plant material later determined to be marijuana. Although Officer Nickels stuck his head in the truck, at no time did he rummage around the interior, open compartments, or move things around. Hartman eventually retrieved her boots, clothes, and makeup from the truck but could not locate the charger. Officer Nickels told Hartman that he saw the marijuana to which Hartman replied, "and the steroids" and described a pill bottle containing blue tablets.

3

(Transcript p. 18). Hartman was escorted back to the casino lobby where a security officer lent her a phone.

Thereafter, Officer Nickels called the prosecutor to obtain a search warrant based on his observation of marijuana inside the truck. Hartman overheard the conversation and stated that the drugs were hers. After obtaining the search warrant, Officers found and seized a pair of hemostats, a pill bottle containing white and blue tablets that were later identified as hydrocodone and alprazolam, a package of rolling papers, a glass bottle containing a blue fluid later identified as anabolic steroids, a bag of marijuana, a pill bottle containing plant residue, and burnt marijuana cigarettes.

On May 16, 2012, the State filed an Information charging Napier with Count I, possession of a schedule III controlled substance, a Class D felony, Ind. Code § 35-48-4-7(a); Count II, possession of a schedule III controlled substance, a Class D felony, I.C. § 35-48-4-7(a); Count III, possession of a schedule IV controlled substance, a Class D felony, I.C. § 35-48-4-7(a); Count IV, possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11(1); Count V, disorderly conduct, a Class B misdemeanor, I.C. § 35-45-1-3; and Count VI, public intoxication, I.C. § 7.1-5-1-3.

On November 16, 2009, Napier filed a motion to suppress the evidence, alleging violations of both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. On July 31, 2012, a hearing was held. On August 7, 2012, the trial court issued its Order denying Napier's motion to suppress. On August 20, 2012, the trial court certified its Order for interlocutory appeal, which we accepted.

4

Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Napier argues that the trial court abused its discretion by denying his motion to suppress. He asserts that Officer Nickel's initial search of his truck violated his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

We review a denial of a motion to suppress similar to other sufficiency matters. *Dora v. State*, 957 N.E.2d 1049, 1052 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*. We do not reweigh the evidence, but consider conflicting evidence in the light most favorable to the trial court's ruling. *Id*. Uncontested evidence, however, is viewed in favor of the defendant. *Id*.

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures; its protections extend to the States through the Fourteenth Amendment. *Id*. "[A] search arises out of an intrusion by a governmental actor upon an area in which a person maintains a reasonable expectation of privacy." *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006) (internal quotation omitted). An expectation of privacy gives rise to Fourth Amendment protection where the defendant had an actual or subjective expectation of privacy and the claimed expectation is one which society recognizes as reasonable. *Krise v. State*, 746 N.E.2d 957, 969 (Ind. 2001). Without a reasonable expectation of privacy there is no interest that is protected by the Fourth Amendment. *Woodson v. State*, 966 N.E.2d 780, 788 (Ind. Ct. App. 2012).

Napier argues that he had a reasonable expectation of privacy based on his delivery of his truck to the parking valet. Specifically, he contends that entrusting his truck to the valet created a bailment agreement, which Napier contends gave rise to an actual subjective expectation of privacy that society would deem reasonable. In contrast, the State argues that Napier's entrustment of the truck to the valet is irrelevant for Fourth Amendment purposes since the police could have accompanied Hartman to the vehicle where parked and further that assuming a bailment existed, Napier has not shown that the valet released control of the truck to the police.

Under these facts we decline to find that Napier had a reasonable expectation of privacy. Assuming that Napier's delivery of his truck to the valet created a bailment, such relationship is characterized by the bailee's exclusive possession. See *Kottolowski v. Bridgestone/Firestone, Inc.*, 670 N.E.2d 78, 82 (Ind. Ct. App. 1996), *trans. denied*. Delivery entails a transfer "of the property to the bailee as to exclude the possession of the owner and all other persons and give to the bailee, for the time being, the sole custody and control of the property." *Id*. Simply put, by leaving his truck in the possession and control of the valet, Napier assumed the risk that the valet would allow access to the truck.

Napier next argues that Officer Nickel conducted a warrantless search of his truck when assisting Hartman with retrieving her personal effects. A search involves an exploratory investigation, prying into hidden places, or a looking for or seeking out. *Lewis v. State*, 949 N.E.2d 1243, 1246 (Ind. 2011). That which is in plain view is not the

6

product of a search. *Avant v. State*, 528 N.E.2d 74, 76 (Ind. 1988). The use of a flashlight does not does not transform an officer's observations into a search. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*.

Here, Hartman entered the vehicle to retrieve her personal items. Officer Nickel used his flashlight to illuminate the truck's interior. There is no evidence that Officer Nickel directed Hartman to move things around or open compartments inside the vehicle. Although Officer Nickel admittedly stuck his head inside the door frame, the evidence shows that this action was taken to assist Hartman with finding her personal effects. *See Lewis*, 949 N.E.2d at 1246. Additionally, Hartman exposed the contraband contained in the center console on her own. Therefore, because Officer Nickel restricted his activities, his eventual observation of the hemostats, rolling papers, and marijuana in plain view inside the truck's center console was not an illegal search and did not violate the Fourth Amendment. As a result, we conclude that the trial court did not err in denying Napier's motion to suppress.[1]

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by denying Napier's motion to suppress evidence.

Affirmed.

---

[1] Because we conclude that Officer Nickel's actions did not constitute a search under the Fourth Amendment, we do not reach Napier's argument that the search was unjustified under the automobile exception to the warrant requirement. Furthermore, although Napier asserts a claim under Article 1, Section 11 of the Indiana Constitution, he recognizes that no argument was made to the trial court. Consequently, we do not address it here.

BRADFORD, J. and BROWN, J. concur