# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision is not binding precedent for any court and may be cited only for persuasive value or to establish res judicata, collateral estoppel, or law of the case.



I N  T H E

# Court of Appeals of Indiana

**Brian Keith Petro,**

*Appellant-Defendant*



FILED

Dec 15 2025, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

**State of Indiana,**

*Appellee-Plaintiff*

---

December 15, 2025

Court of Appeals Case No.
25A-CR-683

Appeal from the Howard Superior Court

The Honorable Hans S. Pate, Judge

Trial Court Cause No.
34D04-2307-F2-1982

---

**Memorandum Decision by Chief Judge Altice**
Judges Kenworthy and Scheele concur.

**Altice, Chief Judge.**

## Case Summary

Brian Keith Petro appeals his convictions, following a jury trial, of Level 3 felony possession of methamphetamine and Level 6 felony auto theft. He challenges the trial court's decision to admit into evidence items that were recovered by police after they walked up his driveway to investigate a tip about a stolen vehicle and methamphetamine. He asserts the following restated issue: Were the police unlawfully on private property such that all the items were seized in violation of the Fourth Amendment and Article 1, Section 11 and should have been excluded at trial?

We affirm.

## Facts & Procedural History[1]

During a traffic stop in the early morning hours of July 13, 2023, Kokomo Police Department Officers Alex Toth and Justin Macky arrested two individuals for possession of methamphetamine and marijuana, including Olivia Gibson (Olivia), whose sister is Petro's girlfriend, Caroline. Olivia told the officers about "a large amount of methamphetamine" and two U-Haul

---

[1] Oral argument was held on November 20, 2025, at Indiana Wesleyan University in Marion, Indiana. We thank the faculty, students, community leaders, and members of the local bar for the warm welcome. We also appreciate counsel traveling to this argument so that the high school and college students in attendance could witness their skillful advocacy.

trucks,[2] one possibly stolen, at a residence at 1108 Columbus Boulevard, where she said Petro and Caroline lived and where Olivia had been staying. *Transcript Vol. 2* at 149; *see also id*. at 181. Olivia reported that she had rented one of the U-Hauls and that it was parked in front of the house on the street. She told the officers that the U-Haul she suspected as stolen was parked in the driveway and was missing its U-Haul stickers/decals.

[4] Around 4:00 a.m., Officers Macky and Toth proceeded to Columbus Boulevard to investigate the tip from Olivia. The officers saw a U-Haul pickup truck parked on the street in front of 1104 Columbus Boulevard, which was next door to 1108 Columbus Boulevard. They saw a similar truck parked in the driveway of 1104 Columbus Boulevard. Based on their observations and the information they had received from Olivia, the officers believed the pickup in the driveway was the suspected stolen U-Haul. The driveway was not gated or enclosed and ran along the side of the house to a detached garage in the rear. From the street, they could see that the driver-side door of the truck was open such that the interior lights of the passenger cab were on. Given the time of night and the open door, the officers believed it was likely that someone was in or near the truck.

[5] The officers, who were in full uniform, walked up the driveway to investigate. The pickup was parked toward the end of the driveway and next to the house,

---

[2] Both of the U-Hauls involved are pickup trucks.

and, as they neared, they saw that the U-Haul decals had been removed. They encountered a man, Gavin Thatcher, standing near the front passenger side of the truck. As Officer Toth approached Thatcher, Officer Macky walked past the open driver's door "to make sure there's nobody [] inside," and he observed a backpack on the seat with the grip of a handgun sticking out. *Id*. at 150.

[6] While the officers were speaking with Thatcher on the driveway near the side entry door to the home, they smelled marijuana and suspected the odor "was coming from the house." *Id.* at 185. They also heard a commotion inside the house and saw a man, later identified as Petro, look out the window at them. Shortly thereafter, Petro exited the front door and hurried to the U-Haul parked in the street, opening its door. Despite the officers' commands to stop what he was doing, Petro continued "reaching [] behind the seat area" with his hand. *Id*. at 151; *see also id*. at 184. As the officers neared Petro, they smelled marijuana. Officer Macky attempted to detain Petro, but he initially resisted by keeping his arms in front of his body. Shortly thereafter, Petro was detained and handcuffed, and Officer Macky conducted a pat-down search for weapons. In the front pocket of Petro's sweatshirt, Officer Macky found a baggie of a crystal-like substance he believed to be crystal methamphetamine and a baggie of plant substance he believed to be marijuana. The substances field-tested positive for methamphetamine and marijuana.

[7]     The officers obtained and executed a search warrant for the two U-Haul pickups and the house.[3] In the U-Haul parked in the driveway, police discovered, among other things, methamphetamine and a digital scale.

[8]     On July 14, 2023, the State charged Petro with Level 2 felony dealing in methamphetamine, Level 3 felony possession of methamphetamine, Class A misdemeanor resisting law enforcement, and Level 6 felony auto theft. Petro filed a motion to suppress the evidence on January 3, 2025, asserting the officers acted unreasonably under Article 1, Section 11 of the Indiana Constitution. A hearing was held on January 6 at which Officers Toth and Macky testified. The trial court summarily denied the motion by order the next day.

[9]     A two-day jury trial was held starting January 13, 2025. Before Officer Macky testified as to what he found on Petro's person during the pat-down, Petro objected: "Judge I'll object to introduction of any testimony or evidence regarding anything that was seized from that day. I recognize we've already done a hearing [] on the matter. But preserving the objection for the record." *Id.* at 153. The trial court overruled the objection. When Officer Macky was asked about what evidence was collected during the execution of the search warrant of the U-Haul in the driveway, Petro objected: "Judge once again we'll just

---

[3] A few hours after the execution of the warrant, Officer Macky contacted a local U-Haul rental office and learned that the U-Haul parked in the driveway had been reported to U-Haul as stolen, although U-Haul had not yet reported such to authorities.

object and put a continued objection to any evidence seized on that day from that property" *Id*. at 156. The trial court overruled the objection.

[10] During the search of the U-Haul parked in the driveway, police located a Smith and Wesson revolver that Officer Macky had seen sticking out of a bag on the front seat, methamphetamine in seven knotted baggies in an unlocked lockbox, a digital scale, and empty baggies. In the U-Haul parked in the street, officers found a Taurus handgun in the area where Petro had been reaching. In a trash bin outside of the residence, police found a gallon-sized baggie with methamphetamine residue in it. The methamphetamine found in the U-Haul was lab tested and determined to be about 166 grams. The methamphetamine found on Petro's person was field tested only and was about 55 grams. These narcotics were admitted, over Petro's objection, which was: "Same objection as the others judge." *Id*. at 234. Both officers' body camera footage was admitted into evidence during trial and played, in part, for the jury.

[11] Richard McNally testified to renting a U-Haul pickup truck in July 2023 for several days for the purpose of helping Thatcher move. When the truck was due back to U-Haul, he did not know where it was, so he informed U-Haul that it had been stolen. The manager of a Kokomo U-Haul location, Steven Miller, confirmed that McNally had rented a pickup and provided the name of "Brian" as an alternate contact. *Id*. at 223. Miller stated that McNally later called and advised that the truck had been stolen. *Id.* at 225. Miller testified that when the U-Haul was eventually returned, its decals and markings were missing.

The jury found Petro guilty of Level 3 felony possession of methamphetamine and Level 6 felony auto theft and not guilty of the remaining charges. In February 2025, the trial court sentenced Petro to an aggregate fourteen years, with nine years executed at the Indiana Department of Correction, one year on work release, and the balance suspended to probation. Petro now appeals.

## Standard of Review

Generally, trial courts have broad discretion to admit or exclude evidence, and we review for abuse of that discretion. *Combs v. State*, 168 N.E.3d 985, 990 (Ind. 2021), *cert. denied* (2022). However, when a challenge to an evidentiary ruling is based on the constitutionality of the search or seizure of evidence, it raises a question of law that we review de novo. *Id.*

## Discussion & Decision

Petro contends that the evidence used to convict him was obtained in violation of both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Specifically, he argues that the officers "commenced an illegal search" of the truck in the driveway, which led to the observation of the handgun, and that all evidence recovered during the ensuing investigation was fruit of the poisonous tree and should have been excluded. *Appellant's Brief* at 18.

### Fourth Amendment

The Fourth Amendment, incorporated against the states through the Fourteenth Amendment, protects people against unreasonable searches and

seizures. *Combs*, 168 N.E.3d at 991. A warrantless search or seizure is per se unreasonable, and the State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement. *Id*. "To encourage compliance with the Fourth Amendment, [] evidence seized in violation of the Constitution must be excluded at trial unless an exception to this 'exclusionary rule' applies." *Shotts v. State*, 925 N.E.2d 719, 723 (Ind. 2010). The exclusionary rule "is a judicially created remedy designed to safeguard the right of the people to be free from unreasonable searches and seizures." *C.P. v. State*, 39 N.E.3d 1174, 1179 (Ind. Ct. App. 2015), *trans. denied*. The "fruit of the poisonous tree" doctrine is one facet of the exclusionary rule of evidence. *Hill v. State*, 956 N.E.2d 174, 179 (Ind. Ct. App. 2011), *trans. denied*.

> When applied, the doctrine operates to bar not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure. To invoke the doctrine, a defendant must show that challenged evidence was obtained by the State in violation of the defendant's Fourth Amendment rights. Stated differently, the defendant must show that the search or seizure was illegal in the first instance. Where there is no illegal search or seizure, there can be no "fruit of the poisonous tree."

*Id.*

[16] On appeal, Petro makes several arguments in support of his position that the evidence used to convict him was seized in violation of the Fourth Amendment, including: (1) the officers "already kn[e]w the tip [was] wrong" before they started walking up the driveway as the address they received from

Olivia was 1108 Columbus Boulevard, not 1104 Columbus Boulevard, where they saw the U-Hauls; (2) the warrant exception for exigent circumstances was inapplicable as "there was no shortage of time nor an emergency for the Officers" and, thus, before entering the driveway, they should have contacted dispatch with the VIN of at least the U-Haul in the street to determine if it had been reported as stolen; and (3) the plain view exception to the warrant requirement was also inapplicable as the officers were not "rightfully occupying a particular location" as required for the plain view exception to apply. *Appellant's Brief* at 18, 19, 20.

[17] The State maintains that Petro's trial objections were general in nature and referred to and relied on his previously-denied motion to suppress, which raised only Article 1, Section 11 of the Indiana Constitution as a basis to exclude the evidence. Thus, the State argues, any argument Petro now raises under the Fourth Amendment is waived. *Id*. at 10. We agree. Waiver notwithstanding, we find no violation of the Fourth Amendment.

[18] A "search" in the context of Fourth Amendment protections arises out of an intrusion by a governmental actor "upon an area in which a person maintains a reasonable expectation of privacy." *Dora v. State*, 957 N.E.2d 1049, 1052 (Ind. Ct. App. 2011), *trans. denied* (some quotations omitted). A constitutionally protected reasonable expectation of privacy exists where there is both a subjective expectation of privacy and societal recognition that such expectation of privacy is reasonable. *Id*. While curtilage surrounding the home generally merits Fourth Amendment protections, the Fourth Amendment does not

protect activities or items that, even if within the curtilage, are knowingly exposed to the public. *Id.* at 1052 (quotations omitted). Our Supreme Court has recognized that "[n]o unreasonable search occurs when police enter areas of curtilage impliedly open to use by the public to conduct legitimate business," such as at the front door of a residence. *Hardister v. State*, 849 N.E.2d 563, 570 (Ind. 2006) (Fourth Amendment not implicated where police, acting on a tip concerning drugs being cooked at a residence, knocked on the front door of the home and observed defendant through a window near that door).

[19] Further, areas impliedly open to use by the public are not limited to the front door. In *Trimble v State*, 842 N.E.2d 798, 802 (Ind. 2006), our Supreme Court explained that "police entry onto private property and their observations do not violate the Fourth Amendment when the police have a legitimate investigatory purpose for being on the property and limit their entry to places visitors would be expected to go, such as walkways, **driveways**, and porches." *Id.* (where officer went to residence to investigate report of malnourished dog tied up outside and was walking on the driveway to the home's back door when he saw a doghouse and found the dog) (emphasis added).

[20] Here, acting on the tip about a stolen U-Haul and methamphetamine at a residence, Officers Toth and Macky went to the area to investigate. Upon seeing two pickups parked next door to the address given by Olivia, one a U-Haul in the street and another pickup in the driveway with an interior light on, the officers walked up the driveway to investigate. As they approached, they saw that the driveway truck was missing U-Haul decals as Olivia had told

them. Through an open door, Officer Macky saw the grip of a handgun sticking out of a bag on the seat. On these facts, we reject Petro's claim that the officers were unlawfully on private property such that Officer Macky's observation of the handgun was an illegal search of the truck. Rather, we find that the officers' conduct while on the driveway, investigating a tip about a stolen vehicle and methamphetamine, falls within the scope of police conduct identified as permissible in *Trimble*. *See also State v. Seidl*, 939 N.E.2d 679, 684 (Ind. Ct. App. 2010) (no Fourth Amendment violation where officer parked and walked up the driveway toward a residence to investigate an anonymous complaint concerning methamphetamine production and, passing a pole barn, saw suspected drug activity through an uncovered window, which led to a consensual search of the barn).

## Article 1, Section 11

[21] Petro also asserts that the officers' conduct violated Article 1, Section 11 (Section 11) of the Indiana Constitution. Notwithstanding the textual similarity, Section 11 is interpreted separately and independently from Fourth Amendment jurisprudence. *State v. Washington*, 898 N.E.2d 1200, 1205-06 (Ind. 2008). Under Section 11, the burden is on the State to demonstrate that each relevant intrusion was reasonable in light of the totality of the circumstances. *Holder v. State*, 847 N.E.2d 930, 940 (Ind. 2006). The reasonableness of a search or seizure turns on a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the

extent of law enforcement needs. *Watkins v. State*, 85 N.E.3d 597, 599 (Ind. 2017) (citing *Litchfield v. State*, 824 N.E.2d 356, 359-61 (Ind. 2005)). In some cases, Section 11 confers greater protections to individual rights than the Fourth Amendment. *W.H. v. State*, 928 N.E.2d 288, 296, (Ind. Ct. App. 2010), *trans. denied*. The focus of the exclusionary rule under the Indiana Constitution is the reasonableness of police conduct. *C.P.,* 39 N.E.3d at 1182.

[22] Initially, we address the State's argument that Petro waived his claims under the Indiana Constitution for failure to present a separate state constitutional analysis as required. Petro addressed his state constitutional claims at oral argument, thereby sufficiently providing us with his position. Given our preference to decide issues on their merits, we elect to consider his challenge under the Indiana Constitution. *See e.g.*, *Jackson v. State*, 165 N.E.3d 641, 646 (Ind. Ct. App. 2021) (recognizing that this court "has long exercised its discretion to address the merits of a party's constitutional claim notwithstanding waiver"), *trans. denied*.

[23] In challenging the reasonableness of the officers' conduct and addressing the *Litchfield* factors, Petro argues that the degree of intrusion – which he characterizes as two unknown individuals walking up the length of the driveway and standing directly next to the house at 4:00 a.m. and unlawfully searching a truck – was high. And he maintains that the extent of law enforcement needs was low, because, even though the officers were checking on a suspected stolen vehicle, that vehicle was parked, not running, and had no occupants, such that there was little likelihood that it would suddenly be moved

from the scene. While he argues that the factors weigh against the State and in favor of unreasonable police conduct, we are unpersuaded.

[24] Rather, we agree with the State that the degree of intrusion on Petro's privacy was low. The officers walked on an open and not long or extended driveway to the truck, which was within view of the street, when Officer Macky observed, through an open door and in the illuminated cab, a handgun sticking out from a bag on the seat. With regard to the extent of law enforcement needs, the two officers, in the middle of the night, were investigating a tip about a stolen vehicle and quantities of methamphetamine at Petro's residence. They received the tip from Olivia who had been staying with Petro and who was just arrested for methamphetamine possession. When they arrived, they saw a light on in the cab of the truck in the driveway, leading them to suspect that someone might be in or near it, so they proceeded up the driveway to investigate. We agree with the State that, in these circumstances, the extent of law enforcement needs was high.

[25] As to the degree of concern or suspicion that a violation had occurred, the State maintains that the officers' concern or suspicion, even if not high upon their initial arrival at the scene, certainly increased as events quickly developed, including Petro exiting out of a front door, not in the officers' direct view, and hurrying to the truck parked in the street and reaching into it despite officers' commands to stop. Upon consideration of the *Litchfield* factors, we conclude that Officers Toth and Macky acted reasonably under the totality of the circumstances and no violation of the Indiana Constitution occurred.

Judgment affirmed.


Kenworthy, J. and Scheele, J., concur.


ATTORNEY FOR APPELLANT

Eric Grzegorski
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Alexandria Sons
Deputy Attorney General
Indianapolis, Indiana